**ROSES, INCORPORATED, Plaintiff,**

v.

**The UNITED STATES, Defendant,**

**Asocolflores, et al., Defendants–Intervenors. (Three Cases)**

**ROSES, INCORPORATED, Plaintiff,**

v.

**The UNITED STATES, Defendant,**

**Asociacion Nacional De Productores y Exportadores De Ornamentales De Mexico A.C. (Anapromex), Defendant–Intervenor.**

**ROSES, INCORPORATED, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court Nos. 84–10–01447, 84–10–01371, 84–08–01215, 84–05–00632 and 84–07–00857.**

United States Court of International Trade.

March 1, 1988.

Stewart and Stewart, Eugene L. Stewart, Washington, D.C., for plaintiff.

James M. Spears, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Sheila N. Ziff, Washington, D.C., for defendant Dept. of Commerce, Intern. Trade Admin.

Lyn M. Schlitt, Gen. Counsel, James A. Toupin, Asst. Gen. Counsel, Judith M. Czako, Washington, D.C., for defendant Intern. Trade Com'n.

Duncan, Allen and Mitchell, Leslie Alan Glick and John P. Williams, Washington, D.C., for defendant-intervenor Anapromex.

## MEMORANDUM OPINION AND ORDER

RE, Chief Judge:

Plaintiff moves before the chief judge for reassignment of these five actions from the assigned judge, and also moves to set aside the orders of dismissal issued by the assigned judge. Since the chief judge concludes that the statutory authority to reassign a case should not be exercised after the assigned judge has rendered a final decision, the motions are denied.

### Background

Plaintiff, an association of domestic rose growers, instituted five separate actions challenging various antidumping and countervailing duty determinations by the Department of Commerce's International Trade Administration (ITA) and the International Trade Commission (ITC) pertaining to fresh cut roses imported from Colombia and Mexico. In 1981, plaintiff commenced court no. 81–07–00857, challenging the ITA's decision not to initiate an antidumping investigation as to imports from Colombia. The remaining four actions were commenced in 1984. In court no. 84–05–00632, plaintiff contested the ITA's final determination that Mexican producers of certain fresh cut flowers did not receive bounties or grants within the meaning of the countervailing duty law. In court nos. 84–08–01215 and 84–10–01447, plaintiff challenged certain aspects of the ITA's final determination of sales at less than fair value of imports from Colombia. In court no. 84–10–01371, plaintiff sought review of the ITC's final determination of no material injury to the domestic industry due to imports of fresh cut roses from Colombia.

Pursuant to the statutory authority of the chief judge to assign cases, 28 U.S.C. § 253(c), these five actions were assigned by the chief judge to a single judge.

On January 11, 1988, the assigned judge, *sua sponte*, and apparently without notice, dismissed all five actions for "lack of prosecution" pursuant to Rule 41(b)(2) of the Rules of the United States Court of International Trade. That rule, in pertinent part, provides:

(b) Involuntary Dismissal—Effect Thereof.

(2) Whenever it appears that an action is not being prosecuted with due diligence, the court may upon its own initiative after notice, or upon motion of a defendant, order the action dismissed for lack of prosecution.

Rule 41(b) also provides that an involuntary dismissal, including those issued in these actions pursuant to paragraph (2), "operates as a dismissal upon the merits...." USCIT R. 41(b)(4).

Plaintiff's motions are before the chief judge to reassign on the ground that "special circumstances" surrounding these cases "warrant reassignment." It should be noted that throughout the motion papers of both plaintiff and the government defendants, the parties have misstated the authority under which the chief judge may reassign an action. Since it is clear that plaintiff's motions for reassignment were intended to be made pursuant to 28 U.S.C. § 253(c) and Rule 77(e)(4), they will be considered as made on the authority of those provisions.

Plaintiff asserts that the "special circumstances" which require the granting of these motions are the "delay in ruling upon pending motions and the unwarranted *sua sponte* dismissals of these actions," and concludes that the orders of dismissal "were issued in error...." Plaintiff also maintains that it is clear that the "procedural posture" of these cases reveals that there is no basis for their dismissal for "lack of prosecution."

In response to plaintiff's motions for reassignment, the defendant ITA opposes the motion to reassign court no. 81–01–00857, since the matter "involves no actual case or controversy and has long since been mooted." Defendant ITA has no objection to plaintiff's motion to set aside the dismissals of court nos. 84–10–01447, 84–08–01215, and 84–05–00632, and defers to the discretion of the chief judge.

In court no. 84–10–01371, the defendant ITC takes no position on plaintiff's motion to reassign since that question is entrusted to the "sound discretion" of the chief judge. On plaintiff's motion to set aside the dismissal, defendant ITC supports plaintiff's position, and states that "the [c]ourt's order dismissing ... [the] action for want of prosecution was based on a mistake." Defendant ITC does not indicate the nature of the "mistake."

Defendant-intervenor, Anapromex, in court no. 84–05–00632, opposes plaintiff's motions in that action to reassign and set aside the dismissal. Anapromex characterizes plaintiff's motion to reassign as an attempt to "move the case from a Judge from whom it has received an unfavorable result," and asserts that plaintiff has failed to set forth any "legal or factual basis that constitute[s] 'special circumstances' pursuant to Rule 77(e)(4) of this Court so as to allow reassignment." As to plaintiff's motion to set aside the *sua sponte* dismissal, Anapromex submits that the assigned judge acted properly in the exercise of judicial discretion in managing assigned cases.

### Discussion

Plaintiff's motions present a significant question of first impression, and implicate considerations of judicial independence, as well as "the effective and expeditious administration of the business of the courts." In this case, the specific question presented is whether the statutory authority conferred upon the chief judge of this court to reassign a case should be exercised after the judge to whom a case was assigned has taken judicial action by dismissing the case. Since the chief judge has decided that the discretionary authority to reassign a case should not be exercised as requested by plaintiff, the motions are denied.

The statutory authority of the chief judge to reassign a case from one judge to another is found in 28 U.S.C. § 253(c), which provides:

> The chief judge, under rules of the court, may designate any judge or judges of the court to try any case and, when the circumstances so warrant, reassign the case to another judge or judges.

28 U.S.C. § 253(c) (1982).

This statutory authority is implemented by Rule 77(e)(4) of the Rules of the Court of International Trade, which provides:

> *Reassignment.* An action may be reassigned by the chief judge upon the death, resignation, retirement, illness or disqualification of the judge to whom it was assigned, *or upon other special circumstances warranting reassignment.*

USCIT R. 77(e)(4) (Emphasis added).

As implemented by Rule 77(e)(4), the statutory authority of the chief judge to reassign a case to another judge may be exercised only "upon the death, resignation, retirement, illness or disqualification of the judge" to whom the case was assigned, or upon "other special circumstances" that would justify the reassignment.

Plaintiff's motions to reassign do not assert any of the reasons specified in Rule 77(e)(4) which describe situations in which the assigned judge is unable to perform judicial duties because of "death, resignation, retirement, illness or disqualification." Clearly, therefore, the chief judge may exercise the authority and discretion to reassign these cases only if there exist "other

special circumstances warranting reassignment."

Since plaintiff does not allege any of the specific grounds set forth in the applicable rule pertaining to the inability of the assigned judge to perform judicial duties, its request for reassignment must be based on "other special circumstances warranting reassignment." The special circumstances stated by the plaintiff are "the inability to obtain rulings on a variety of motions" from the assigned judge, "the delay in ruling upon pending motions" by the assigned judge, and "the unwarranted *sua sponte* dismissals" for "lack of prosecution" by the assigned judge.

In essence, the ultimate relief requested by plaintiff in these motions is to have the chief judge review, as though on an appeal, final decisions of another judge of this court. The relief requested on that review is to have the final decisions set aside. It cannot be doubted that, regardless of the procedural methods used or the manner in which plaintiff phrases its requested relief, plaintiff seeks a reversal of the dismissals by the assigned judge.

The fundamental question presented, therefore, is whether the statutory reassignment authority conferred upon the chief judge should be exercised to permit an intracourt appeal from the final decision of the assigned judge.

While not directly in point, the opinion in *National Corn Growers Ass'n v. Baker*, 10 CIT ——, 643 F.Supp. 626 (1986), is instructive, and sheds light on the exercise of discretionary authority by the chief judge to reassign cases. In *National Corn Growers*, the defendant-intervenor moved before the chief judge for reassignment of that case to a three-judge panel to rehear the decision of a single-judge court. The chief judge concluded that reassignment to a three-judge panel would not "aid in the expeditious disposition of the action," and denied the motion for reassignment. *National Corn Growers*, 10 CIT ——, 643 F.Supp. at 632.

As expressed in *National Corn Growers*, for reasons of judicial economy and efficiency, the statutory authority of the chief judge to reassign cases "should be used sparingly," and motions to reassign a case after it has been assigned to a judge will be viewed with disfavor. *Id.* at ——, 643 F.Supp. at 631. In *National Corn Growers*, it also was stated that "[m]otions for reassignment made after a single judge has rendered a decision face an even heavier burden. Certainly, the chief judge will not allow any party to engage in what may appear to be 'judge shopping.'" *Id.*

It is obvious that plaintiff is dissatisfied with the dismissals of its cases. Furthermore, plaintiff clearly believes, particularly under the circumstances presented, that it was unwarranted and unjustified for the assigned judge to dismiss these cases *sua sponte* for failure to prosecute. However, the question that must be answered is whether these motions to reassign and set aside the orders of dismissal are the proper procedural methods to achieve the ultimate relief sought by plaintiff. The chief judge has concluded that they are not, and that other remedies were and are available.

Plaintiff clearly chose not to submit to the assigned judge the motions to set aside the dismissals, pursuant to 28 U.S.C. § 2646 and USCIT Rules 59 and 60. Nevertheless, it could have filed appeals, pursuant to 28 U.S.C. § 1295(a)(5), from those final decisions to the Court of Appeals for the Federal Circuit. Plaintiff does not indicate why that appeal procedure was not followed.

Furthermore, if prior to the dismissals of these actions, plaintiff believed that it was aggrieved by its alleged "inability to obtain rulings" or a "delay in ruling" on motions pending before the assigned judge, it could have proceeded by petitioning for a writ of mandamus from the Court of Appeals for the Federal Circuit pursuant to 28 U.S.C. § 1651 and Rule 21 of the Federal Rules of Appellate Procedure. *See In re Toshiba*, Misc. Docket No. 151 (Fed.Cir. Feb. 26, 1987) (granting writ of mandamus directing this court to act upon a pending application for preliminary injunction); *see also Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 666–67, 98 S.Ct. 2552, 2559, 57 L.Ed.2d 504 (1978) ("Where a district court obstinately refuses

to adjudicate a matter properly before it, a court of appeals may issue the writ [of mandamus] to correct 'unauthorized action of the district court obstructing the appeal.'"); *In re International Business Machs. Corp.*, 687 F.2d 591, 599 (2d Cir. 1982) (although mandamus cannot be utilized as substitute for appeal, it has been used to compel a lower court "to exercise its authority when it is its duty to do so.").

In sum, plaintiff was and is not remediless in this situation. There were and are appropriate judicial remedies available to the plaintiff other than the reassignment of these cases pursuant to the authority of the chief judge. Plaintiff's requests for reassignment, in effect, are appeals to the chief judge in the hope of setting aside or reversing what plaintiff characterizes as erroneous orders of dismissal.

In plaintiff's motion papers, no reason is given to explain why these other appropriate and available remedies were not pursued. In passing upon these contested motions to reassign, the chief judge must make a determination solely upon the facts and circumstances specified in the moving and responding papers. Furthermore, it is axiomatic that judicial acts, including the *sua sponte* dismissals of these cases, are *prima facie* entitled to the presumption that the assigned judge performed judicial duties in a regular and lawful manner.

Plaintiff's motion papers contain allusions and implications from which it might be inferred that the assigned judge, because of the alleged delays in the disposition of pending motions, has not discharged, to plaintiff's satisfaction, that judge's judicial duties effectively and expeditiously. However, it is nonetheless clear that the statutory responsibility of the chief judge to reassign cases does not include the expressed or implied authority to permit intracourt appeals from the final decisions of another judge of this court. The statutory phrase "when the circumstances so warrant" and the language used in the applicable rule, "special circumstances warranting reassignment" cannot be interpreted to mean that the chief judge may reassign a case after it has been dismissed

even if the chief judge is persuaded that the case should not have been dismissed.

For the chief judge to conclude that these cases were improperly dismissed would be to implicate the merits of the dismissals, and the performance of the judicial duties of another judge. Hence, the normal and proper procedure to be pursued by the aggrieved party to correct these alleged errors is an appeal to the appropriate appellate court. The independence of the assigned judge and proper judicial procedure militate against interpreting the statutory authority of the chief judge to include the reassignment of a case after it has been decided. The potential harm inherent in the discretionary exercise or misuse of that reassignment authority is a sufficient reason to conclude that it cannot be deemed to exist by inference or implication.

It is important to note that under the statutory system for the management of cases before the federal courts, only the judicial councils of the circuits have authority to "make all necessary and appropriate orders for the effective and expeditious administration of justice within" the circuits. *See* 28 U.S.C. § 332(d)(1) (1982); *see also Chandler v. Judicial Council of the Tenth Circuit*, 398 U.S. 74, 76 n. 1, 90 S.Ct. 1648, 1649 n. 1, 26 L.Ed.2d 100 (1970).

That statutory grant of authority to the judicial councils was before the Supreme Court in the *Chandler* case. In the *Chandler* case, the Judicial Council of the Tenth Circuit, acting under the authority of section 332, made a finding that Judge Chandler was "unable, or unwilling, to discharge efficiently the duties of his office," and issued an order reassigning his pending cases, and prohibiting the assignment to him of any future cases. 398 U.S. at 77, 90 S.Ct. at 1650. Judge Chandler, a district court judge, challenged the authority of the Council to issue the order, and applied to the Supreme Court for the extraordinary writ of mandamus. Specifically, the judge contended that the Council "usurped the impeachment power, committed by the Constitution to the Congress exclusively." *Id.* at 82, 90 S.Ct. at 1652.

The Supreme Court did not entertain the judge's application for an extraordinary writ. Although the application was denied, the various judicial opinions in the case highlight the sharp differences of views on judicial independence, and the need for accountability to attain "the effective and expeditious administration of the business of the courts."

In delivering the opinion of the Supreme Court, that Judge Chandler had "not made out a case for the extraordinary relief of mandamus or prohibition," Chief Justice Burger wrote:

> Whether the action taken by the Council with respect to the division of business in Judge Chandler's district falls to one side or the other of the line defining the maximum permissible intervention consistent with the constitutional requirement of judicial independence is the ultimate question on which review is sought in the petition now before us. The dissenting view of this case seems to be that the action of the Judicial Council relating to assignment of cases is an impingement on judicial independence. There can, of course, be no disagreement among us as to the imperative need for total and absolute independence of judges in deciding cases or in any phase of the decisional function. But it is quite another matter to say that each judge in a complex system shall be the absolute ruler of his manner of conducting judicial business. The question is whether Congress can vest in the Judicial Council power to enforce reasonable standards as to when and where court shall be held, how long a case may be delayed in decision, whether a given case is to be tried, and many other routine matters. As to these things—and indeed an almost infinite variety of others of an administrative nature—can each judge be an absolute monarch and yet have a complex judicial system function efficiently?

*Id.* at 84–85, 90 S.Ct. at 1653–54. Chief Justice Burger added that:

> The legislative history of 28 U.S.C. § 332 and related statutes is clear that some management power was both needed and granted....

> Many courts—including federal courts —have informal, unpublished rules which, for example, provide that when a judge has a given number of cases under submission, he will not be assigned more cases until opinions and orders issue on his "backlog." These are reasonable, proper, and necessary rules, and the need for enforcement cannot reasonably be doubted. These internal rules do not come to public notice simply because reasonable judges acknowledge their necessity and abide by their intent. But if one judge in any system refuses to abide by such reasonable procedures it can hardly be that the extraordinary machinery of impeachment is the only recourse.

*Id.* at 85, 90 S.Ct. at 1654 (footnote omitted).

In his concurring opinion in *Chandler*, Justice Harlan wrote that a judicial council's specific statutory authority to:

> "make all necessary orders for the effective and expeditious administration of the business of the courts within its circuit" was intended to encompass the making of orders that would direct a district judge to clear up his docket or would channel cases to other judges when a situation existed with respect to one judge that was inimical to the effective administration of justice.

*Id.* at 121, 90 S.Ct. at 1673 (Harlan, J., concurring). *But see id.* at 129, 90 S.Ct. at 1676 (Douglas, J., dissenting); *id.* at 141, 90 S.Ct. at 1682–83 (Black, J., dissenting). *See generally* Re, *Judicial Independence and Accountability: The Judicial Councils Reform and Judicial Conduct and Disability Act of 1980*, 8 N.Ky.L.Rev. 221, 237–39 (1981).

It is important to note, however, that the Congress has not included this court within a judicial council. Hence, the judges of this court are not subject to any judicial council's statutory authority to issue orders necessary "for the effective and expeditious administration of the business" of the court. Furthermore, there is no statute that confers upon this court the author-

ity conferred upon a judicial council under 28 U.S.C. § 332.

This is not to say that in the absence of specific statutory authority a chief judge has no authority to act in the court's case management system. Chief judges "have —and are perceived as having—a sizable reservoir of authority that is inherent in the office itself." R. Wheeler, *Desk Book for Chief Judges of United States District Courts* A–12 (Federal Judicial Center 1984).

It is for that reason that, as explained in the *Desk Book,* "the conventional and widely accepted view" is that a chief judge "is ultimately responsible for seeing that the court is administered in compliance with statute, with Judicial Conference and circuit judicial council policies, and with Conference-approved Administrative Office regulation and, in a more general sense, is administered effectively and efficiently." *Id.* at A–9.

Included among a chief judge's "responsibilities and opportunities for effective leadership," described in the *Desk Book,* is the resolution of problems with a court's case assignment system. When a court's assignment system poses a threat to the court's "ability to serve litigants fairly" the problems may "call for intervention by the chief judge to resolve them." *Id.* at F–6. Indeed, this helpful desk book enumerates some of the responsibilities and prerogatives of the chief judge including the correcting of imbalances in case assignments, and the "shifting" of a case from one judge to another.

However, there is no inherent or implied authority in the case assignment responsibilities of a chief judge that permits interference with a judge's independence after that judge has decided a case.

This court may exercise other statutory powers of a judicial council only in the limited circumstances prescribed in 28 U.S. C. § 372(c)(17), when a written complaint is filed with the clerk of the court which alleges that a judge: (1) has engaged in conduct prejudicial to the effective and expeditious administration of the business of the court; or (2) is unable to discharge all the duties of office by reason of mental or physical disability. As required by section 372(c)(17), this court has prescribed appropriate rules for the implementation of this important legislation.

Nevertheless, in the absence of the statutorily authorized proceedings prescribed by section 372(c)(17), there is no statutory authority that authorizes either the chief judge of this court, or the court itself, to interfere with the independence of any judge in the performance of judicial duties by reassigning a case after the judge has rendered a final decision.

In conclusion, it is well to note that this decision does not preclude plaintiff from its desire to overturn these dismissals by using appropriate appellate procedures. Since it is apparent that plaintiff wishes judicial review of these dismissals by someone other than the assigned judge, pursuant to 28 U.S.C. § 1295(a)(5) plaintiff may pursue appeals from the dismissals to the Court of Appeals for the Federal Circuit.

Accordingly, for the reasons stated, it is

ORDERED that the motions for reassignment and rehearing are denied.