**NORWEST BANK INDIANA, N.A. f/k/a First Interstate Bank of Northern Indiana, N.A. f/k/a The National Bank and Trust Company of South Bend, Appellant–Plaintiff,**

v.

**John F. FRIEDLINE and Carl F. Brunson, Appellees–Defendants.**

**No. 71A03–9111–CV–334.**

Court of Appeals of Indiana, Third District.

May 13, 1992.

---

Rebecca Hoyt Fischer, Butler, Simeri, Konopa & Laderer, South Bend, for appellant-plaintiff.

James R. Kuehl, South Bend, for appellees-defendants.

GARRARD, Judge.

Plaintiff appeals from the St. Joseph Superior Court's grant of its motion for summary judgment in which the court denied part of the damages it was requesting. We affirm.

On June 12, 1985, John F. Friedline (Friedline) and Carl F. Brunson (Brunson) executed and delivered to Norwest Bank Indiana, N.A. (Norwest), a promissory note in the principal amount of $62,000.00. On that same date, in order to secure the amount loaned, Friedline and Brunson also executed and delivered to Norwest a mortgage covering designated commercial real estate located in St. Joseph County, Indiana. On June 12, 1990, Friedline and Brunson executed and delivered to Norwest an extension of the June 12, 1985, promissory note, upon the same terms and conditions as the original note, which extended repayment until February 1, 1991. Friedline and Brunson failed to repay the loan by that date.

On May 8, 1991, Norwest filed a complaint against Friedline and Brunson seeking a monetary judgment and foreclosure of the mortgage. Thereafter, on June 3, 1991, Norwest filed a motion for summary judgment with supporting affidavits seeking foreclosure and a monetary judgment. On July 15, 1991, Norwest also filed a supplemental affidavit in proof of damages which stated in part that Norwest incurred, as an expense of foreclosure, costs in the amount of $4,062.90 for environmental surveys in connection with its cause of action.

Norwest's policy and procedures require it to obtain an environmental assessment in every foreclosure of commercial real estate so that it may determine its potential liability for statutorily required environmental cleanups prior to taking title to the real estate. Furthermore, because Norwest does not have the expertise to conduct an environmental assessment, it retained an

engineering firm, Envirocorp Services and Technologies, Inc., to perform a phase I environmental assessment at a cost of $1,080.00. The phase I assessment revealed the presence of two underground tanks which were previously used to store gasoline and kerosene. As a result, a phase II assessment, which consisted of a subsurface soil and groundwater investigation to determine if leakage from the tanks had contaminated the soil, was conducted at a cost of $2,982.90.

A hearing was held on July 18, 1991, and the trial court, with the Honorable George N. Beamer, Jr., presiding, granted Norwest's motion for summary judgment, but held that the costs incurred by Norwest for environmental assessments in the total amount of $4,062.90 were not recoverable by Norwest in its foreclosure action. As a result, Norwest appeals.

The sole issue on appeal is whether the trial court erred as a matter of law by holding that the costs incurred by Norwest for environmental assessments were not recoverable as a reasonable cost or expense of suit or foreclosure pursuant to the language of Norwest's promissory note and mortgage instrument.

Norwest appeals from a grant of its motion for summary judgment in which it did not obtain all the damages it requested. Summary judgment is proper only when no issue of material fact exists and the movant is entitled to judgment as a matter of law. *Ogden Estate v. Decatur County Hosp.* (1987), Ind.App., 509 N.E.2d 901, 902, *trans. denied.* In this case, there is no dispute as to the facts, but the parties are in disagreement as to whether the trial court correctly denied Norwest's environmental assessment expenses.

■ In the interpretation of contracts, courts must first consider the parties' intent as expressed in the language of the contract. *DeHaan v. DeHaan* (1991), Ind. App., 572 N.E.2d 1315, 1320, *trans. denied.* Furthermore, courts must read all of the contractual provisions as a whole to accept an interpretation which harmonizes the contract's words and phrases and gives ef-

fect to the parties' intentions as established at the time they entered the contract. *Id.*

The promissory note at issue provided that, "[I]f suit is brought to collect this Note, the Note holder shall be entitled to collect *all reasonable costs and expenses of suit, including, but not limited to,* reasonable attorney fees (R. p. 8)." (emphasis added). The mortgage instrument at issue similarly provided that "[L]ender shall be entitled to collect in such [a foreclosure] proceeding *all expenses of foreclosure, including, but not limited to,* reasonable attorney's fees, and costs of documentary evidence, abstracts and title reports (R. p. 14)." (emphasis added).

Norwest claims the "not limited to" language of the instruments requires Friedline and Brunson to compensate Norwest for the cost of environmental assessments that it requested. We disagree.

■ Instead, we agree with the trial court that the expense of an environmental assessment is not a "reasonable cost or expense of suit" or an "expense of foreclosure." As a matter of law, the trial judge could have properly found that both phrases contemplate common or incidental expenses incurred when suing on a note or foreclosing on another's property. In this case, the environmental assessments, which cost $4,062.90, are not a common or incidental expense regularly associated with suit or foreclosure. Significantly, nothing in the law requires a mortgagee to secure such an assessment as a precondition either to foreclosure or to acquiring title to the property. Furthermore, although a lender may require environmental assessments before foreclosing and taking title, such an expense is not one normally contemplated as being a "foreclosure expense" by a borrower absent specific designation in the written instruments. Even Norwest's Assistant Vice President for Commercial Lending, Andrew R.P. Veenstra, stated he believed the documents *presently* in use by Norwest for making loans secured by commercial real estate specifically provide for an environmental study (R. p. 100). However, when Norwest extended the loan to Friedline and Brunson in

1985, and re-extended it under the same terms in 1990, there is no evidence that Norwest specifically required Friedline and Brunson to pay for environmental assessments. Norwest has not directed us to, nor or we aware of any authority for, the proposition that the cost of assessments is an expense of suit or foreclosure.

Beginning in 1985, court decisions made lenders aware of their potential liability for cleanup costs on environmentally contaminated land in which they had a security interest. *See e.g., United States v. Mirabile,* 1985 WL 97 (E.D.Pa.), 15 Envtl.L.Rep. 20, 992, 15 Envtl.L.Rep. 20, 994 (E.D.Pa., Sep. 06, 1985); *United States v. Maryland Bank & Trust Co.,* 632 F.Supp. 573, 54 U.S.L.W. 2547, 24 ERC 1193, 16 Envtl. L.Rep. 20,557 (D.Md., Apr. 09, 1986); *Guidice v. BFG Electroplating & Mfg. Co., Inc.,* 732 F.Supp. 556, 30 ERC 1665, 20 Envtl.L.Rep. 20,439 (W.D.Pa., Sep. 01, 1989). The decisions emphasize that lenders may under some circumstances become potentially liable as "owners or operators" of the property under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA). *Id.; See also* CERCLA § 107; 42 U.S.C. § 9607.

In response to these cases, the Environmental Protection Agency (EPA) proposed lender liability rules to give lenders guidance as to their potential liability under the security interest exemption of CERCLA. *See* 56 Fed.Reg. 121,28798 (1991) (to be codified at 40 C.F.R. pt. 300) (proposed June 24, 1991). The proposed rules essentially *acknowledge* that environmental investigations by lenders may serve as a step toward meeting the CERCLA security interest exemption.[1] *Id.* at 28808. In the notes to the proposed rules, the EPA also recognized that it has become customary and common practice for holders of security interests to undertake or require environmental inspections to minimize their risk of environmental liability. *Id.* at 28800–28801. However, the EPA's proposed rules do not *require* lenders to conduct environmental assessments, and even lenders that do not conduct assessments

may qualify for the security interest exemption. *Id.* at 28803–28804. Conducting environmental assessments may be prudent for lenders, but it is not required presently and was not required in 1985 when Friedline, Brunson, and Norwest entered the agreements. Because environmental assessments are not required, the cost or expense of such assessments cannot always be anticipated and should be specifically provided for in agreements between lenders and borrowers.

In this case, Friedline, Brunson, and Norwest could not have even contemplated that the use of environmental assessments would become common or customary at the time they entered the agreements at issue on June 12, 1985. By Norwest's own admission in its brief, it was not until September, 1985 and afterward that court decisions made lenders aware of possible liability for clean-up costs and the need to conduct environmental assessments to safeguard their interests (Appellant's Brief, pp. 7–8). The better and more equitable practice by lenders is to specifically designate who is responsible for the costs of environmental assessments, if required, in their instruments instead of relying on all-encompassing "boilerplate" language. Apparently, such a practice has now been adopted by Norwest. In this case, we cannot say as a matter of law that the trial court erred by denying Norwest compensation for the assessments.

The trial court's grant of summary judgment is in all respects affirmed.

MILLER, J., concurs.

STATON, J., concurs in result and files separate opinion.

STATON, Judge, concurring in result.

While I would reach the same result as that reached by the majority, I would do so for a different reason.

The majority grounds its holding on the assertion that it was not foreseeable that environmental assessments would become common or customary at the time the par-

---

1. The proposed rule was approved and became effective on April 29, 1992. *See* 57 Fed.Reg. 83,18344. The rule does not *require* lenders to conduct environmental site assessments. *Id.*

ties entered the agreements. I believe that the plain language of the note and mortgage compels the result here, without necessitating an examination of the purported expectations of the parties at the time of the execution of the documents.

The language of the note and mortgage allows the collection of "all reasonable costs and expenses of suit" or "all expenses of foreclosure." The documents modify these phrases by listing reasonable attorney's fees, costs of documentary evidence, abstracts, and title reports. Each of these modifiers are essentials to the foreclosure suit—attorney's fees are incurred as a result of the foreclosure suit, documentary evidence is used in proving the mortgagee's case, and abstracts and title reports are used to ascertain that all those who have an interest in the subject real estate are named as party defendants in the action. The phrase "including, but not limited to" should be construed in the same vein.

Crucial to such a construction is the fact that the foreclosure suit and the purchase of the property at the foreclosure sale are two distinct and different transactions. The mortgagee does not take title to the property automatically, nor may it sell the property itself in an attempt to satisfy the judgment. *Ellsworth v. Homemakers Finance Service, Inc.* (1981), Ind.App., 424 N.E.2d 166, 169, *reh'g denied* 438 N.E.2d 6. The judgment of foreclosure must order the mortgaged premises to be sold at a sheriff's sale. Ind.Code 34–1–53–3; Ind. Code 34–1–53–6. Here, as is customary, the order granting summary judgment provides that the mortgagee was "empowered to bid for the said mortgaged property or any part thereof, with the indebtedness due the Plaintiff...." Record, p. 62. However, the mortgagee is not required to bid for the property, nor is it assured of obtaining the property at the public sale.

In that context, it is clear that an expense incurred by a mortgagee "to obtain an environmental assessment in every foreclosure of commercial real estate so that it may determine its potential liability for statutorily required cleanups prior to tak-

ing title to the real estate," maj. op. at 600, is not an expense of the foreclosure suit at all. It is an expenditure, albeit a prudent one, to aid in the decision whether to bid for the property at the foreclosure sale. I would hold that expenses which relate to the mortgagee's decision whether to bid for the property at the sheriff's sale are not "expenses of foreclosure" or "reasonable costs and expenses of suit." I would hold that such expenses are not collectible absent a specific provision in the mortgage documents to the contrary.