**GENERAL REINSURANCE CORP. and North Star Reinsurance Corp., Appellants,**

**v.**

**CIBA–GEIGY CORP., Appellee.**

**No. 1236, Docket 88–7245.**

United States Court of Appeals, Second Circuit.

Argued June 15, 1988.

Decided July 28, 1988.

---

Peter J. Schlesinger, Simpson Thacher & Bartlett, New York City (Pamela L. Weisberg, Elizabeth A. Forman, of counsel), for appellants.

John W. Barnum, White & Case, New York City (Vincent R. Fitzpatrick, Jr., Margaret Murphy, Janis M. Meyer, of counsel), for appellee.

Before OAKES, MESKILL and PIERCE, Circuit Judges.

OAKES, Circuit Judge:

Two insurance companies appeal an order of the United States District Court for the Southern District of New York, Edmund L. Palmieri, Judge, staying a declaratory judgment action on abstention grounds in deference to a pending state action. Appellants argue that the order was an abuse of the district court's discretion. We disagree and accordingly affirm.

## BACKGROUND

CIBA-Geigy Corp. ("CIBA-Geigy") was formed by the merger of CIBA Corp. ("CIBA") into Geigy Chemical Corp. ("Geigy"). CIBA was a Delaware corporation with headquarters in Summit, New Jersey, and major manufacturing facilities in Summit and Toms River, New Jersey. Geigy was a New York corporation with headquarters in Westchester County, New York, and major operations at Toms River, New Jersey.

CIBA-Geigy's annually revised insurance program consists of a primary policy that provides a certain amount of coverage and several layers of excess coverage. Each excess layer provides coverage when the coverage provided by the primary carrier and by excess carriers on lower layers has been exhausted. General Reinsurance Corp. ("General Re") and North Star Corp. ("North Star") were excess insurance carriers for CIBA and Geigy in most years between 1959 and 1971. The notice provisions in all of the contracts issued by General Re to CIBA and Geigy are substantially the same, stating, "THE REINSURED [CIBA or Geigy] shall immediately advise the Reinsurer [General Re] of any claims which appear likely to result in liability under this Certificate." The notice provisions of the North Star policies issued to CIBA and Geigy state, "The Company [CIBA or Geigy] will advise the Reinsurer [North Star] promptly and fully of any claim or any subsequent developments pertaining thereto which may, in its opinion, involve this reinsurance."

On November 28, 1987, General Re and North Star filed suit in the United States District Court for the Southern District of New York seeking declaratory judgment of their contractual rights with respect to the notification and cooperation provisions of excess liability insurance policies issued to CIBA and Geigy (hereinafter the "New York action"). Appellants alleged that CIBA-Geigy had breached the insurance contracts by failing to give adequate notice of certain environmental claims against it and that, as a result, General Re and North Star were absolved of all liability under the policies.

CIBA-Geigy answered the complaint on December 14, 1987, and served very limited

discovery requests consisting of a request for identification of witnesses and a limited request for documents. General Re and North Star also served a document request and a notice of deposition.

On December 17, 1987, CIBA–Geigy filed suit in New Jersey Superior Court against two primary general liability carriers, seeking a declaratory judgment as to each insurer's coverage obligations and duties of defense and indemnity with respect to the environmental claims lodged against it. *CIBA–Geigy Corp. v. Liberty Mut. Ins. Co.*, No. L.–97515–87 (N.J.Super.Ct.Law Div.) (filed Dec. 17, 1987) (hereinafter "New Jersey action"). Five days later, CIBA–Geigy added a third primary insurer and its 135 excess liability insurers including General Re and North Star. The claims involve more than seventy sites including the five CIBA and fourteen Geigy sites as to which CIBA–Geigy claims General Re and North Star are responsible. Over a dozen of the seventy sites are in New Jersey, and no site insured by General Re or North Star is in New York.

On January 20, 1988, two of CIBA–Geigy's primary carriers removed the New Jersey action to federal court. On April 20, 1988, the district court remanded. *CIBA–Geigy Corp. v. Liberty Mut. Ins. Co.*, Civ. No. 88–405 (D.N.J. Apr. 20, 1988).

On December 31, 1987, CIBA–Geigy filed a motion to dismiss or stay the New York action pending final resolution of the New Jersey action. Pursuant to a stipulation between the parties, no further discovery has taken place in the New York action since that time. Anticipating "the prospect of two identical cases being litigated simultaneously before this Court and the New Jersey state court," the district court expressed its concern for "piecemeal litigation." Finding "no issues of federal law," the court concluded that "[t]he pending New Jersey lawsuit appears to be the appropriate means to resolve all of the relevant issues here" and stayed the action. Expressly modeling the stay on the one fashioned in *Calvert Fire Insurance Co. v. American Mutual Reinsurance Co.*, 459 F.Supp. 859, 862 (N.D.Ill.1978), *aff'd*, 600 F.2d 1228 (7th Cir.1979), the court stated: "The stay is not final, and will be vacated if—but only if—it is demonstrated by either litigant that avoidance of unfair prejudice so requires."

## DISCUSSION

■ As a preliminary matter, we must decide whether the district court's order is appealable under 28 U.S.C. § 1291 (1982) as a final decision or as a collateral order. An order staying an action is final when its sole purpose and effect are the surrender of jurisdiction to a state court. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 10 & n. 11, 103 S.Ct. 927, 933 & n. 11, 74 L.Ed.2d 765 (1983). Although the language of the order suggests it is formally subject to revision, that language merely expressed the court's general authority to reassert jurisdiction when it deems it necessary to do so. *Moses H. Cone*, 460 U.S. at 12–13, 103 S.Ct. at 935. We consider the order appealable because it was "made with the expectation that [the stay] will be the final word on the subject addressed." *Id.* at 12–13 n. 14, 103 S.Ct. at 935 n. 14, *quoted in Gulfstream Aerospace Corp. v. Mayacamas Corp.*, —— U.S. ——, 108 S.Ct. 1133, 1137, 99 L.Ed.2d 296 (1988). "[T]he practical effect of [the] order was entirely the same [as dismissal] for present purposes, and the order [is] appealable." *Moses H. Cone*, 460 U.S. at 13, 103 S.Ct. at 935. It is worth noting that even before the Supreme Court decided *Moses H. Cone*, the Seventh Circuit without hesitation reviewed the stay upon which Judge Palmieri herein expressly fashioned his order. *See Calvert Fire Ins. Co. v. American Mut. Reins. Co.*, 600 F.2d 1228 (7th Cir.1979), *aff'g* 459 F.Supp. 859 (N.D.Ill. 1978).

■ This court also has appellate jurisdiction because "a stay of litigation pursuant to *Colorado River [Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) ] meets each of the three requirements of the collateral-order doctrine and therefore is appealable under § 1291." *Gulfstream Aerospace*, 108 S.Ct. at 1137. The stay

herein (1) "conclusively determine[s]" whether the federal court will exercise its jurisdiction, *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978); (2) "resolve[s] an important issue completely separate from the merits of the action," *id.;* and (3) is "effectively unreviewable on appeal from a final judgment." *Id.* Because the New Jersey action embraces the issues involved in the federal action, the res judicata effect of resolution of the state action would preclude further litigation in the district court. *See Liberty Mut. Ins. Co. v. Foremost–McKesson, Inc.,* 751 F.2d 475, 477 (1st Cir. 1985) (Timbers, J., sitting by designation).

▅▅▅ Having determined that there is appellate jurisdiction, we now turn to the district court's decision to stay a federal action because of parallel state court litigation. The appropriateness of this decision depends on a balancing of several factors, with the balance heavily weighted in favor of the exercise of jurisdiction. *See Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. at 937. The factors include: (1) the assumption by either court or jurisdiction over res or property, *Colorado River,* 424 U.S. at 819, 96 S.Ct. at 1247; (2) the inconvenience of the federal forum, *id.* at 818, 96 S.Ct. at 1247; (3) the avoidance of piecemeal litigation, *id.;* (4) the order in which jurisdiction was obtained by the concurrent forums, *id.,* and the progress of the federal court litigation, *Moses H. Cone,* 460 U.S. at 16, 103 S.Ct. at 937; (5) whether state or federal law supplies the rule of decision, *id.* at 23, 103 S.Ct. at 941; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction, *id.* at 26, 103 S.Ct. at 942. *See also Lumbermens Mut. Cas. Co. v. Connecticut Bank & Trust Co.,* 806 F.2d 411, 414 (2d Cir.1986).

▅▅▅ Applying these factors, we find that the district court did not abuse its discretion in staying the action. True, neither court had jurisdiction over any res or property, a fact that "militate[s] against dismissal" of the federal suit. *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.,* 800 F.2d 325, 327–28 (2d Cir.1986). As to the convenience of the federal forum, the district court noted that "[t]he insurance corporations involved here, doing business on a multi-state basis, can as easily litigate in New Jersey as in New York." Although General Re and North Star allege that the disputed contracts were negotiated, written, issued, and delivered in New York, and CIBA–Geigy has New York corporate headquarters, North Star has its principal place of business in New Jersey, CIBA–Geigy maintains two of its larger operating facilities in New Jersey, and General Re's and North Star's potential liability primarily is based on environmental claims arising in substantial part from New Jersey operations while no claim involves New York sites or operations.

The district court placed the greatest weight on the third factor, the avoidance of piecemeal litigation. *See Lumbermens,* 806 F.2d at 414. General Re and North Star argue that the two actions raise different issues: the New York action concerns the timeliness of CIBA–Geigy's notice of claim and the adequacy of its cooperation, and New Jersey action involves the contractual obligations of General Re and North Star to CIBA–Geigy. However, these issues are inextricably linked. Because General Re and North Star provide excess insurance, determining the point at which a claim appears "likely to result in liability" (General Re's notice provision) or when it "involve[s] this reinsurance" (North Star's notice provision) requires a determination of a reasonable estimate of the amount of the claim at any particular point in time, the amount of primary coverage in a particular period, the layer of coverage of the particular excess policy, and the extent to which the underlying primary and excess coverage has been or is likely to be exhausted. As the New Jersey action embraces all these issues, the risk of piecemeal litigation is real and should be avoided. *Lumbermens,* 806 F.2d at 414; *Travelers Indemnity Co. v. Monsanto Co.,* 692 F.Supp. 90 (D.Conn.1988); *Companion Life Ins. Co. v. Matthews,* 547 F.Supp. 836, 839–42 (S.D.N.Y.1982); *American Motor-*

*ists Ins. Co. v. Philip Carey Corp.*, 482 F.Supp. 711 (S.D.N.Y.1980).

As to the fourth factor, "[t]he order in which the concurrent tribunals obtained and exercised jurisdiction," *Moses H. Cone*, 460 U.S. at 21, 103 S.Ct. at 939, the district court properly "attache[d] no importance to the earlier filing date of th[e New York] action." As in *Lumbermens*, the limited discovery makes the claimed "considerable progress" "strictly illusory." 806 F.2d at 415.

The parties agree that the New York action involves purely state law issues. Although the absence of federal issues does not require the surrender of jurisdiction, it does favor abstention where "the bulk of the litigation would necessarily revolve around the state-law ... rights of [numerous] ... parties." *Moses H. Cone*, 460 U.S. at 23 n. 29, 103 S.Ct. at 941 n. 29; *see id.* at 26, 103 S.Ct. at 942; *Colorado River*, 424 U.S. at 820, 96 S.Ct. at 1247; *cf. Lumbermens*, 806 F.2d at 415 ("presence of state law issues rarely weighs in favor of the surrender of federal jurisdiction").

The final factor, protecting the rights of the party seeking to invoke federal jurisdiction, also favors abstention. The New Jersey action embraces the notice and cooperation questions at issue in this action, and General Re and North Star are parties to both actions. *Compare Bethlehem Contracting Co.*, 800 F.2d at 328 (state court cannot resolve entire controversy where a claim in federal action was not present in state action and one of the federal defendants was not in the state action). General Re and North Star argue that the New Jersey action is not likely to proceed expeditiously because it is a complex multidefendant case and because a magistrate has recommended that the case be stayed until September 1988. In addition, they contend that many of the claims raised may not be tried together because New Jersey courts increasingly refuse to entertain claims in insurance-related judgment actions which involve hazardous waste sites outside New Jersey. *See, e.g., SCM Corp. v. Lumbermens Mut. Cas. Co.*, No. L–96187–87 (N.J. Super.Ct.Law Div. May 25, 1988) (dismissing claims as to non-New Jersey sites on forum non conveniens ground). *See Westinghouse Elec. Corp. v. Aetna Casualty & Surety Co.*, Nos. L–069351–87, L069352–87 (N.J.Super.Ct.Law Div. Mar. 22, 1988) (majority of claims in comprehensive insurance coverage action dismissed on forum non conveniens ground); *Texas Eastern Transmission Corp. v. Fidelity & Casualty Co.*, No. W030685–87 (N.J.Super.Ct.Law Div. Mar. 17, 1988) (same). However, these cases are distinguishable. Only four of the forty-seven sites at issue in *SCM Corp.* were located in New Jersey. In *Texas Eastern*, neither the plaintiff nor the defendant was a New Jersey resident; there were also ongoing proceedings in Texas and in Pennsylvania, each of which had three times the number of contamination sites as New Jersey. In *Westinghouse*, not only were nine of eighty-one environmental sites for which insurance coverage was sought located in New Jersey, but the action also related more to asbestos, PCB, and other toxic exposure claims that had almost no connection to New Jersey. Here, however, many of the insurance companies are incorporated or have their principal places of business in New Jersey, a greater proportion of the sites are in New Jersey, and most of the potential liability involves environmental claims arising from New Jersey operations.

We conclude that the district court properly applied the *Colorado River/Moses H. Cone* balancing test and did not abuse its discretion in staying the action. Accordingly, we affirm.