**Eric LORENTZEN, Plaintiff,**

v.

**LEVOLOR CORPORATION, a New Jersey Corporation, and DWCC–Hiller Holding, Inc., a Delaware Corporation, Defendants.**

**No. 90 Civ. 5085 (WK).**

United States District Court,
S.D. New York.

Oct. 18, 1990.

Wayne A. Cross, Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, for plaintiff.

Lewis R. Clayton, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, Senior District Judge.

The complaint in this action seeks, among other things, to enjoin an arbitration which has been ordered by the courts of New Jersey in litigation arising out of the sale of a corporation known as Lorentzen–Levolor, Inc. (hereinafter "the corporation"). Plaintiff Eric Lorentzen (hereinafter "Lorentzen") now moves for a preliminary injunction which would in effect countermand an order of the New Jersey Superior Court directing that such arbitration proceed. Defendants cross-move to dismiss the complaint. This memorandum concerns itself only with Lorentzen's motion, and will confine its statement of facts to those relevant to the demand for preliminary relief. For reasons which follow, such preliminary relief is denied.

## THE UNDERLYING FACTS

In May of 1988 Lorentzen and two of his siblings [hereinafter "the siblings"], each of whom owned shares of the corporation, began negotiations with the defendants in

this action [hereinafter "the purchasers"], who were interested in acquiring control of the corporation. On May 20 the parties entered into a "Merger Agreement", the effect of which was to transfer to the purchasers ownership of the shares in question at a stated price of $51,627,951. That price reflected the value of the corporation as indicated in an earlier certified financial statement. The parties, having anticipated that some legitimate dispute as to the proper valuation of the corporation might arise at the time of the closing, included in the merger agreement a clause providing that the stated purchase price was subject to adjustment, and that any dispute arising from such adjustment would be resolved by arbitration.

The merger agreement contemplated an August closing which ultimately occurred on August 17, on which day the purchasers paid the stated purchase price. Lorentzen asserts that immediately prior to the closing an unidentified attorney purportedly acting on behalf of the purchasers had informed him that any subsequent downward price adjustment would in the "worst case" be $15 million dollars; and that he had relied on this representation in deciding to proceed with the closing without attempting to renegotiate the arbitration clause. However, in November, the purchasers notified him and others from whom they had purchased shares that the true value of the corporation was approximately $33 million dollars less than the amount they had actually paid, and demanded repayment of such a sum. Upon refusal of such demand, the purchasers took steps to enforce the above-described arbitration clause.

### THE NEW JERSEY ACTION

By means of a complaint signed on November 22, 1988, the siblings and other shareholders of the corporation instituted against the purchasers an action in the Superior Court of New Jersey. The complaint alleged the underlying facts as set forth above, and claimed fraud in the inducement of the merger agreement. It demanded among other things that the arbitration be enjoined. Although Lorentzen's name did not appear in the complaint as originally filed, he was subsequently allowed to intervene in the action as a party plaintiff.

The purchaser-defendants, rather than interpose an answer to that complaint, moved to dismiss it and for an order directing that the challenged arbitration proceed. On February 17, 1989 the court, acting through its Chancery Division, granted the purchasers' motion in part. It rejected the complaint's demand for an injunction, entered an order compelling Lorentzen and the other shareholders to proceed with the arbitration, and expressly withheld decision on all other aspects of the complaint (including the allegations of fraud) pending completion of such arbitration.[1]

In April 1990, since Lorentzen had ignored the order of the Chancery Division directing him to proceed with the arbitration, the purchasers moved before the Superior Court's Law Division to compel him to obey that order. On April 27, the Law Division entered an order compelling him to appear before the arbitrator within 20 days or be fined $1,000 per day. However, in response to Lorentzen's assertion that he anticipated asking for relief from a federal court and was fearful that he might be placed in the position of being fined by the Law Division for obeying a federal court order staying arbitration, the Law Division amended its provision for a fine to read "so long as no restraint is issued by the U.S. District Court."

At all stages of the New Jersey action Lorentzen persisted in an unsuccessful contention that no arbitration should proceed until his claim of fraud had been resolved. At the same time he made clear that should the New Jersey court ultimately reject this contention he would turn to a federal court for relief. For example, on April 27, 1990

---

1. At some time after the entry of this order the purchasers settled with all plaintiffs except Lorentzen, and all subsequent litigation—both here and in New Jersey—has been between him and the purchasers.

his counsel engaged in the following colloquy with the Law Division:

> MR. CROSS: Your Honor, we were prepared, in fact, to file a federal complaint yesterday when I was informed by counsel we had retained * * * that unbeknownst to him his firm had a conflict * * *
>
> As I stand here, I have the draft of a complaint but didn't get it filed, and I apologize.
>
> THE COURT: You are expecting to do that shortly. Is that correct?
>
> MR. CROSS: Yes.

### THE FEDERAL ACTION NOW BEFORE US

The complaint in the action before us is substantially similar to the one in the New Jersey action.[2] So far as concerns the demand for preliminary relief, the significant fact revealed by the record is that 531 days had elapsed from February 17, 1989, when the Chancery Division directed Lorentzen to proceed with the arbitration, to August 2, 1990, when the instant complaint was filed.

Lorentzen has asserted two reasons for this delay. In his motion papers, while conceding that—by May 30, 1989 at the latest—he was fully aware of the February 1989 order to arbitrate, he asserted that ongoing settlement negotiations and the purchasers' failure to enforce the arbitration order led him to believe that arbitration would never in fact be required; and that it was not until April 1990, when the Law Division ordered sanctions, that arbitration seemed to him imminent. He then explained that even after the April contempt order, he further delayed because at the first arbitration meeting, on May 11, he was granted access to certain accounting documents which he felt would provide a basis for settlement; and that it was not until a July 16 order of the arbitrator compelling submission of a preliminary statement of disputed issues by August 22 that

he was first "faced with the irreparable injury of being forced to proceed on the merits in a fraudulently induced arbitration."

At oral argument Lorentzen offered a second explanation. In response to our specific inquiry of why, after informing the New Jersey court that a federal complaint had been prepared for filing before April 27, no such filing occurred until August 2, it was asserted that there had been difficulty finding New York counsel willing and able to represent Lorentzen's interests.

### DISCUSSION

We are not persuaded by Lorentzen's contention that it took him from February 17, 1989 (when the Chancery Division granted the motion compelling him to arbitrate) until July 16, 1990 (when the arbitrator directed the submission of a preliminary statement of disputed issues) to realize that he might require the assistance of a federal court if he were to avoid arbitration in New Jersey. Aside from being inconsistent with his counsel's solemn April 1990 assurance to the Law Division that a federal complaint had already been prepared and was ready for filing, this contention seems implausible at best. Some indication of its weakness is perhaps to be found in the circumstance that it was not even mentioned in the oral argument before us.

No more persuasive is the explanation about difficulty in finding counsel. If we were to succeed in believing that a person with Lorentzen's resources could not find a lawyer willing and able to file an already prepared federal complaint, it would still be unexplained why it took his counsel more than three months to realize—as he ultimately did—that all he need do was file the document himself.

In short, we can only infer and now do find that the real motive behind the delay was a desire thoroughly to test the waters in New Jersey before pulling the plug on

---

**2.** Although it is not material to our ultimate finding that plaintiff has failed to carry his burden of showing irreparable harm, we note that the parties have disputed whether or not the New Jersey complaint—as the one before us concededly does—specifically raises the claim that the inclusion of the arbitration clause in the merger agreement was procured by fraud.

the litigation which Lorentzen was there pursuing. We conclude that this wholly unjustified delay defeats any claim of irreparable harm, and deny the motion for a preliminary injunction. *See Citibank, N.A. v. Citytrust* (2d Cir.1985) 756 F.2d 273; *Majorica, S.A. v. R.H. Macy & Co.* (2d Cir.1985) 762 F.2d 7. We express no view as to the merits of the complaint. *See, e.g., Bell & Howell: Mamiya Co. v. Masel Supply Co.* (2d Cir.1983) 719 F.2d 42.

## CONCLUSION

The motion for a preliminary injunction is denied.

SO ORDERED.