**Eric LORENTZEN, Plaintiff,**

v.

**LEVOLOR CORPORATION, a New Jersey Corporation, and DWCC–Hiller Holding, Inc., a Delaware Corporation, Defendants.**

**No. 90 Civ. 5085 (WK).**

United States District Court,
S.D. New York.

Dec. 27, 1990.

988

Wayne A. Cross, Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, for plaintiff.

Lewis R. Clayton, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, Senior District Judge.

This case arises out of a claim of fraud pertaining to a merger agreement by which the defendants acquired ownership of Levolor–Lorentzen, Inc. (hereinafter "the corporation") from the plaintiff and other stockholders. The complaint—invoking diversity jurisdiction—alleges that the plaintiff was fraudulently induced by the defendants to consent to the inclusion in that agreement of a clause providing that all disputes regarding an anticipated purchase-price-adjustment would be subject to arbitration, and seeks damages for the fraud both at common law and pursuant to Section 10(b) of the Securities and Exchange Act, 15 U.S.C. § 78j(b), a declaratory judgment that this arbitration clause is void and unenforceable, and a preliminary and permanent injunction barring defendants from proceeding with any arbitration proceedings pursuant thereto. Two years prior to the filing of the instant complaint, plaintiff had brought a similar action in the New Jersey Superior Court seeking an injunction and damages. That action is still pending.

On September 17, 1990 defendants in the instant action moved to dismiss it on the grounds that it is duplicitous of the litigation commenced by plaintiff in New Jersey and is an attempt by plaintiff to collaterally attack decisions there made. Plaintiff cross-moved for a preliminary injunction to prohibit arbitration proceedings which had been ordered by the New Jersey court. On October 18, we issued a memorandum and order denying plaintiff's motion for a preliminary injunction, reasoning that plaintiff's delay in bringing the present action undermined his required showing that proceeding with the arbitration would cause him irreparable harm. We then postponed consideration of defendants' motion.

Plaintiff now asks that we reconsider our denial of a preliminary injunction or, in the alternative, for an expedited trial on the merits of his fraud claim and his demand for a permanent injunction. His papers having presented nothing which we did not consider prior to our October 18 Order, we deny his motion for reargument. His request for an expedited trial, however, requires us presently to address the issues raised by defendants' undecided motion. For reasons which follow, we hold that plaintiff's request for an injunction is moot and that principles of federal abstention require a stay of the proceedings on the claim for damages pending resolution of the proceedings plaintiff had instituted in New Jersey.

## BACKGROUND

The disposition of the present motion does not require a detailed analysis of the

merits of plaintiff's fraud claim, but does necessitate an analysis of the nature of the proceedings pending in New Jersey. We therefore limit our discussion accordingly. For a more detailed statement of the facts upon which plaintiff's fraud claim is based, we refer to our opinion of October 18, 1990 reported in *Lorentzen v. Levolor Corp.* (S.D.N.Y.1990) 746 F.Supp. 1228.

Briefly stated, in May 1988 plaintiff and his fellow shareholders entered into a merger agreement with defendants which provided for the transfer to the defendants of the ownership of a corporation in which plaintiff was a substantial shareholder. The agreement anticipated that the defendants would pay to the corporation's shareholders a purchase price to be agreed upon prior to closing, but that such price would be subject to adjustment after a final determination by independent auditors of the value of the corporation at the time of closing. The merger agreement, signed on May 20, 1988 by plaintiff and other shareholders, contained an express provision that any dispute pertaining to purchase price adjustment was subject to arbitration. On August 17, the closing date, the defendants paid $51,627,951, the purchase price which had been agreed upon. On November 9, defendants notified plaintiff and the other shareholders that a report of independent auditors estimated that the value of the corporation was approximately $33 million less than the sum paid on August 17, and that they intended to commence arbitration proceedings if the resulting purchase price adjustment should be contested.

In November 1988, certain of plaintiff's siblings who were shareholders of the corporation filed an action in the New Jersey Superior Court, Chancery Division (hereinafter "Chancery Division"), seeking to enjoin the proposed arbitration. On or before January 4, 1989 plaintiff moved for leave to

intervene and file his own complaint in that action. That motion was subsequently granted. The complaint then filed by plaintiff [1] alleged that just before the August 17 closing the defendants represented to him that any post-closing adjustment in the purchase price would not exceed $15 million, that he relied on this representation when he decided to go ahead with the closing, and that this representation was made with knowledge of its falsity. Plaintiff expressly pleaded that "[b]y reason of such recklessness, indifference or negligence, defendants should be estopped and barred from seeking an adjustment in the merger consideration or to implement [sic] the arbitration provisions of the merger agreement to effect an adjustment. Under the circumstances such arbitration provision is void and unenforceable".

At a hearing held on January 27, Judge Harry A. Margolis of the Chancery Division rendered an oral opinion rejecting the defendants' contention that the arbitration clause encompassed any claim of fraud in the inducement, and specifically holding that such question was one to be decided by the court. He noted, however, that the interest of justice would, in his view, be served by letting proceed the arbitration of the disagreement concerning the true value of the corporation on the closing date (the determination of which could in no way be affected by the fraud claim) in the hope that a decision favorable to the plaintiff, i.e. a determination that the August 17 value of the corporation was within $15 million of the purchase price paid, might wholly moot the fraud claim.[2]

Turning to the merits of the fraud claim, Judge Margolis ruled that the complaint failed to meet the New Jersey state law standard of particularity for pleading fraud, and would therefore have to be dismissed, but that plaintiff would be allowed

---

**1.** Plaintiff's own complaint was substantially similar to the one previously filed by his siblings. This memorandum will refer only to the one filed by plaintiff.

**2.** In summary, Judge Margolis stated:
I am clearly of the opinion that the arbitration should proceed first. No matter what

happens in this case I'm of the opinion that the arbitration must go forward in order to reach a price. In fact, it's entirely conceivable that the arbitration result may well moot out any of the plaintiff's claims in this case. I'm not saying they will, but they may do that.

to replead and file an amended complaint. He then ruled that the whole matter should be transferred to the Law Division of the New Jersey Superior Court (hereinafter "Law Division"). Those rulings were formalized in a written order dated February 17, 1989.[3]

Having neither appealed nor filed a motion for reargument, plaintiff on March 23, pursuant to the above authorization, filed his amended complaint in the Law Division.

In April 1990, upon plaintiff's refusal to proceed with arbitration, defendants petitioned the Law Division for the imposition of sanctions to compel plaintiff to arbitrate. In the ensuing proceedings before that Division plaintiff was represented by the counsel who now represents him in the matter before us, and argued essentially the same claim which he here presents. Specifically, he there contended that he should not be compelled to arbitrate because he had a valid claim for fraud in the inducement of the arbitration clause which had not been addressed in the Chancery Division proceedings and which, under *Prima Paint Corporation v. Flood & Conklin Mfg. Co.* (1967) 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 is a claim not subject to arbitration but requires judicial adjudication.

The Law Division, Judge Villanueva, did not address the merits of this claim, but rather observed that "Judge Margolis ordered arbitration * * * [i]f someone doesn't like the court's order, they take an appeal of it; they seek leave to appeal, they seek an opportunity to modify it. They don't flout the order which the court finds has been done in this proceeding."

Accordingly on April 27 the Law Division ordered plaintiff to "arbitrate forthwith and without any further delay all issues concerning the purchase price adjustment as provided for in Section 1.8.1 [the arbitration clause] of the Merger Agreement ...", and held that he was to appear before the arbitrator within 20 days or be fined $1,000 for each day of his subsequent refusal to do so.[4] Plaintiff neither appealed this decision, nor made a motion for reargument.

More than three months later, and after plaintiff had—under protest—been participating in arbitration, he filed the instant complaint before us. Such complaint sets forth the same facts contained in his New Jersey complaint, but pleads that the defendants' alleged misrepresentations amount to fraudulent inducement of the arbitration clause (rather than the contract itself), and includes a claim that the defendants' conduct violates section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) (hereinafter "§ 10(b)").[5] Specifically, he pleads— as he did in New Jersey—that just before the closing of the corporation's sale to the defendants, they represented to him that any post-closing adjustment in the purchase price would be in the "worst case" scenario $15 million; that he relied on this representation when he decided to go ahead with the August 17, 1988 closing, and more particularly, when he abstained

**3.** At some time after the entry of this order, plaintiff's siblings and the other shareholders who were parties to the Chancery Division action settled with the defendants. All subsequent litigation—both here and in New Jersey—has been between the defendants and our plaintiff, Eric Lorentzen.

**4.** Plaintiff notes that in the Order of the Law Division, Judge Villanueva inserted the qualification that the provision for monetary sanctions shall be valid "so long as no restraint is issued by the U.S. District Court." As we discussed in our October 18 Order, this provision was inserted in response to plaintiff's argument that in the event he was able to obtain relief from a federal court on his fraud claim, absent such a modification of this order, he might find himself in the untenable position of being in contempt of the

New Jersey court for obeying the orders of a federal court. *See Lorentzen v. Levolor,* 746 F.Supp. at 1229.

**5.** Plaintiff's § 10(b) claim is set out in paragraphs 51 through 54 of the complaint. Paragraph 51 reads "Plaintiff repeats and reaveres the averments of paragraphs 1 through 50", namely the same facts underlying his claim of fraud in the inducement of the merger agreement and fraud in the inducement of the arbitration clause, and paragraph 52 states that "Plaintiff was induced to sell his Levolor stock by defendants' fraudulent representations and omissions averred above. But for defendants' misrepresentations and omissions, plaintiff would not have sold his securities on the terms agreed."

from asking for deletion from the merger agreement of the arbitration provision; that defendants knew when the representations were made that they would in all probability seek a purchase price adjustment in excess of $15 million; and that, accordingly, such representations amounted to fraudulent inducement, which rendered the arbitration clause void. The relief sought by the complaint includes: a) a declaratory judgment that the arbitration agreement is void and unenforceable by reason of defendants' fraudulent inducement thereof, together with a preliminary and permanent injunction barring defendants from proceeding with any arbitration proceeding pursuant thereto; b) a declaratory judgment determining the amount, if any, of a purchase price adjustment; and c) damages to the extent the amount of any purchase price adjustment determined necessary by the court exceeds that which would have resulted if the amount of loss realized by the defendants had not exceeded $15 million.

The parties agree that the New Jersey arbitration proceeding is now on the verge of completion. Indeed, on November 6 they were informed by the arbitrator that he intended to render his decision regarding the proper amount of the purchase price adjustment in eight to twelve weeks.

## DISCUSSION

We may note at the outset that we need not consider whether or not the New Jersey court committed error (constitutional or otherwise) in ruling that plaintiff should proceed with the arbitration before and not after the claim that the arbitration clause had been induced by fraud was determined by the court.[6] Whatever damages may have resulted from that alleged error (the inconvenience and expense of producing evidence and conducting arguments before the arbitrator) have already occurred.

Whether or not such damages could have been materially minimized by a prompt and successful appeal from our order denying a preliminary injunction, there is nothing that can now be done about it.[7]

We may also observe that there is no significance in the plaintiff's shift from his New Jersey strategy of claiming fraud in the inducement of the entire agreement to his present strategy of attacking only the arbitration clause. Had the New Jersey court determined that plaintiff's fraud claim was arbitrable, the distinction suggested in *Prima Paint, supra,* might have become relevant. However in light of that court's actual finding that the plaintiff has the right to have a court determine the merits of his fraud claim, the distinction is without effect. As plaintiff himself has—by filing his amended complaint before the Law Division—protected his right to have the New Jersey court adjudicate his claim of fraud, our decision today does not deny him a right to a judicial determination. It merely confines him to the forum he originally chose.

■ Accordingly, the only issue left for us to decide is whether *Colorado River Water Conservation District v. United States* (1976) 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 requires that we abstain from presently addressing the merits of plaintiff's fraud claims, including his § 10(b) claim.

■ *Colorado River* and its progeny, *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765, outline six factors which a district court is to consider in determining whether in cases involving concurrent state and federal action a decision to abstain from exercising federal jurisdiction is proper. *See General Reinsurance Corp. v. Ciba–Geigy Corp.* (2d Cir.

6. *Rush v. Oppenheimer & Co., Inc.* (S.D.N.Y. 1988) 681 F.Supp. 1045, which plaintiff cites, suggests that he might have had more success with his contention in this regard had he originally chosen a federal forum.

7. In view of this conclusion, although we agree with defendants' contention that the Anti-In-

junction Act, 28 U.S.C. § 2283, would in any event prevent us from enjoining the state court's order to proceed with arbitration, *see Atlantic C.L.R. Co. v. Engineers* (1969) 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234; *Ungar v. Mandell* (2d Cir.1972) 471 F.2d 1163, we need not decide that question one way or the other.

1988) 853 F.2d 78, 81; *cf. Hoai v. Sun Refining and Marketing Co., Inc.* (D.C. Cir.1989) 866 F.2d 1515, 1518 & n. 2. Specifically, these cases instruct that the court is to weigh and evaluate six factors in determining whether abstention is necessary to promote "wise judicial administration". *See Ciba,* 853 F.2d at 81 (quoting *Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1246). These factors are: (1) which court first assumed jurisdiction over the *res* or property involved in the action; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums and the progress of the federal court litigation; (5) whether state or federal law applies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction. *Id.* at 81. No one factor is determinative, and the weight to be given to each may vary substantially from case to case. *U.S. v. Pikna* (2d Cir.1987) 880 F.2d 1578.

Respectful of the Supreme Court's statement that in evaluating these factors "the balance [is to be] heavily weighted in favor of the exercise of jurisdiction", 460 U.S. at 16, 103 S.Ct. at 937, we nonetheless conclude that on the basis of the facts before us abstention is appropriate.

In the instant case, the first and second factors are neutral; neither the federal nor state court has assumed jurisdiction over any *res* or property, and there is no serious contention that the New York federal forum is either more or less convenient than the New Jersey state forum.

With respect to the third factor, the avoidance of piecemeal litigation, it is indisputable that both actions are premised on an adjudication of the same underlying facts, namely the allegation that the defendants informed the plaintiff on the eve of August 17 that any subsequent purchase price adjustment would not exceed $15 million and that the defendants made this statement with knowledge of its falsity. Consequently both the federal and state actions are "inextricably linked". *See*

*Ciba,* 853 F.2d at 81. As plaintiff has already invoked the jurisdiction of the New Jersey court to adjudicate these facts, the risk of piecemeal litigation by invoking federal jurisdiction at this time is real and should be avoided. *See Lumbermens Mut. Cas. v. Connecticut Bank & Trust* (2d Cir.1986) 806 F.2d 411, 414 ("The avoidance of piecemeal litigation should be given great weight in the context of declaratory judgement actions because such litigation would complicate and fragment the trial of cases and cause friction between state and federal forums."); *cf. Juidice v. Vail* (1977) 430 U.S. 327, 337, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376 (stating that abstention may be appropriate as long as a party had an opportunity to present the claims he presents to the federal forum in the state proceedings). Although we do not decide at this time what *res judicata* effect a final decision by the New Jersey court regarding the merits of plaintiff's fraud claims will have on future litigation in the federal court, we note that a decision by the federal court to abstain from exercising jurisdiction at this time may actually eliminate the need for any further proceedings in the federal court, *cf. Marrese v. American Academy of Orthopaedic Surgeons* (1985) 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274, hence promoting "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." 424 U.S. at 817, 96 S.Ct. at 1246 (citations omitted); *see Lumen Construction, Inc. v. Brant Construction Co.* (7th Cir.1986) 780 F.2d 691, 695–96 (stay proper where "state court litigation [would] probably eliminate the need for any further proceedings in federal court.") (cited with approval by the Second Circuit in *Lumbermens,* 806 F.2d at 414).

The critical factor for us, however, is factor four, the order in which jurisdiction was obtained by the concurrent forums and the progress of the *federal* court litigation. It is beyond dispute that in the instant case plaintiff invoked the state court's jurisdiction more than twenty months before he tried to invoke federal jurisdiction, and that there have been no proceedings whatsoever on the merits of plaintiff's fraud claims in

the federal court. *See Lorentzen v. Levolor*, 746 F.Supp. at 1231 (deciding preliminary injunction issue on plaintiff's inability to show irreparable harm and therefore never reaching an evaluation of plaintiff's "likelihood of success on the merits", we stated, "We express no view as to the merits of the complaint.") Moreover, the New Jersey court did expressly address the merits of plaintiff's fraud claims when it dismissed plaintiff's original complaint for failure to plead fraud with sufficient particularity.

Of greatest significance in our review of factor 4—and most influential to our decision to abstain—is the fact that it was *plaintiff* who chose to trigger the jurisdiction of the state court in this matter. As the above discussion reveals, plaintiff was aware of every fact relevant to his § 10(b) claim at the time he chose to commence this action in the state court.[8] Accordingly, on the basis of the facts of this particular case, we conclude that plaintiff's decision to raise his dormant § 10(b) claim more than a year and a half after the filing of his state court complaint—and only after the state court ruled adversely to his interests on two separate occasions—appears to be an attempt by plaintiff to change his original choice of forum in violation of the federal policy against plaintiff removal and forum-shopping. *See Shamrock Oil Corp. v. Sheets* (1940) 313 U.S. 100, 106 & n. 2, 61 S.Ct. 868, 871 & n. 2; 85 L.Ed. 1214; *American Intern. Underwriters v. Continental Insurance Co.*, (9th Cir.1988) 843 F.2d 1253, 1261 (observing "a Congressional intent that a plaintiff should not be permitted to alter the forum that it selects to litigate its claim against a particular defendant"); *cf.* 9 U.S.C.A. § 205 ("Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the *defendant* ... may ... remove such action or proceeding to the district court of the United States ... [of] the place where the action is pending." (emphasis added)).

■ Turning to factor five, plaintiff argues—and we agree—that the fact that this court has exclusive jurisdiction over his § 10(b) claim, *see* 15 U.S.C. 78aa, is to be of serious concern in our deliberations.[9] However, this fact, alone is not dispositive of whether or not abstention is appropriate. *See Will v. Calvert Fire Insurance Co.* (1978) 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (reversing issuance of writ of mandamus which ordered the district court judge to proceed with adjudication of a § 10(b) claim despite concurrent state fraud proceeding, and holding that deference to the concurrent jurisdiction of a state court may be appropriate even when matters of substantive federal law are involved); *Brillhart v. Excess Insurance Co.* (1942) 316 U.S. 491, 494–95, 62 S.Ct. 1173, 1175–76, 86 L.Ed. 1620 ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.") In the circumstances before us, given that plaintiff's

---

**8.** Even absent plaintiff's § 10(b) claim, plaintiff concedes—although perhaps inadvertently—that he had the option of filing all claims which he has asserted against this defendant in federal court at the time he chose to commence his state court action. Specifically, in opposition to defendants' assertion that his § 10(b) claim was not timely filed, plaintiff argued that "at the time of defendants' fraudulent misrepresentations"—and continuing to the present—he was/is a citizen of Nevada. Accordingly, it is plaintiff's own contention that the diversity jurisdiction of the federal courts was available to him at the time he chose a state forum for his fraud claims.

**9.** We note that—contrary to the assertions of plaintiff—the fact that plaintiff's claim of fraud in the inducement of the arbitration clause arises under the Federal Arbitration Act, does not, in and of itself, confer a preference for federal court adjudication. *See Southland Corp. v. Keating* (1984) 465 U.S. 1, 15 n. 9, 104 S.Ct. 852, 861 n. 9, 79 L.Ed.2d 1 ("While the Federal Arbitration Act creates federal substantive law requiring the parties to honor arbitration agreements, it does not create any independent federal question jurisdiction under 28 U.S.C. § 1331 or otherwise.")

§ 10(b) claim is premised on the exact same allegations of misconduct which underlie the claim of fraud which he has presented to the New Jersey state court, and given that plaintiff had access to the federal courts when he in the first instance freely chose to submit the adjudication of these underlying facts to the New Jersey state court, we can perceive of no injustice to require plaintiff to be bound by his original voluntary choice of forum and not permit "the litigation of these hoary claims to occupy the energies of two courts at the same time". *See Klein v. Walston & Co.* (2d Cir.1970) 432 F.2d 936, 937 (holding that district court's stay of plaintiff's Security Exchange Act claim pending final determination of concurrent state action was appropriate, given that plaintiff initiated both suits, the state action was pending at the time plaintiff commenced the federal action, and "[the state] can authoritatively determine the common law claims and perhaps also defenses such as *res adjudicata* and the statute of limitations that may be dispositive of the 1934 Act claims as well"); *Mottolese v. Kaufman* (2d Cir. 1949) (L. Hand, C.J.) 176 F.2d 301 (abstention may be appropriate to protect defendant against the hardship of having to defend against a second action on the same claim). As even Justice Brennan noted in his dissent in *Calvert,* under existing Supreme Court precedent an exception to the rule that abstention is not appropriate may exist "where the order to the parties to repair to the State court would clearly serve an important countervailing interest". 437 U.S. at 673, 98 S.Ct. at 2563 (citation omitted). We believe the federal policy against plaintiff removal and forum-shopping is just such an important countervailing interest and accordingly that, on the basis of the facts peculiar to this case, abstention is justified. *See Ryder Truck Rental v. Acton Foodservices Corp.* (C.D. Cal.1983) 554 F.Supp. 277.

As for the sixth factor, namely whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction, we conclude—as did the plaintiff when he chose the state forum—that there is no reason to believe that the state can not adequately and competently adjudicate the facts underlying plaintiff's common law fraud claims. *See Becher v. Contoure Laboratories, Inc., et al.* (1928) (Holmes, J.) 279 U.S. 388, 391–92, 49 S.Ct. 356, 357–58, 73 L.Ed. 752. To imply otherwise would violate every principle of comity. As for plaintiff's § 10(b) claim, we can perceive of no prejudice which will accrue to that claim by our decision to stay the instant action until completion of the state court proceedings. Given that the federal court has exclusive jurisdiction over this claim, it is beyond dispute that our decision not to exercise jurisdiction at this time does not—as it could not—relinquish adjudication of the merits of this claim to the state forum. Although a decision by the state court adverse to plaintiff may moot this claim, *cf. Ultracashmere House, Ltd. v. Meyer* (11th Cir.1981) 664 F.2d 1176, 1183–84, this is a result which is not caused by our decision to stay the exercise of federal jurisdiction, but rather it is the result of plaintiff's decision to present the adjudication of the facts underlying this claim to the New Jersey Court in the first instance.

As to any assertion that our decision to stay the exercise of federal jurisdiction may cause undue delay in the progress of plaintiff's § 10(b) claim, we observe that this argument is premature. Given that the parties have informed us that a final decision by the arbitrator is presently due, we have no reason to believe that the New Jersey court will not address the merits of plaintiff's fraud claims in a timely fashion. In the event that the state court does not so proceed, our decision to stay and not dismiss the federal action means that plaintiff is then free to ask this court to again consider his case, in light of these new circumstances. We note that since this entire action involves a determination of what—if any—amount of money is due to the defendants, and given that plaintiff did not assert his § 10(b) claim until at least 20 months after his discovery of the alleged misconduct on which it is based, delay,

itself, does not seem to be detrimental to the rights of plaintiff, the party here seeking to invoke federal jurisdiction.

Accordingly, as the Court in *Kent v. New York City Sanitation* (S.D.N.Y.1980) 27 Fair Empl. Prac. Cas. 122, 1980 WL 261 stated, "The plaintiff thus should return his attention to the state court proceedings. * * * When those proceedings have reached some resolution, this court will consider whether there is anything left for it to decide." [10]

## CONCLUSION

Plaintiff's motion for reargument, or in the alternative for an expedited trial, is denied. Defendants' motion to stay any further proceedings in this court pending a final resolution of the related state court proceedings commenced by plaintiff is granted. As *Ciba* grants plaintiff the right to appeal our decision in this matter, we need not address a request to certify pursuant to 28 U.S.C. § 1292(b) the questions presented to us. 853 F.2d at 80.

In accord with our decision to stay the instant action, we hereby place this matter on our suspense calendar pending notification by the parties of the conclusion of the state action.

SO ORDERED.

**10.** Defendants contend that since the Second Circuit has recently adopted the uniform one year—three year statute of limitations for § 10(b) claims, *Ceres Partners v. GEL Associates* (2d Cir.1990) 918 F.2d 349, plaintiff's 10(b) claim is already time-barred. Given that the court in *Ceres* expressly left open the question of whether its holding should be retroactively applied, and given that for reasons of wise judicial administration we have determined that a stay of the instant action is appropriate, we need not address the merits of the statute of limitations issue at this time.