OXFORD HOUSE, INC., "John Doe I," "John Doe II," and "John Doe III," Plaintiffs,

v.

CITY OF ALBANY, Defendant.

No. 92–CV–1683.

United States District Court, N.D. New York.

April 16, 1993.

Disability Advocates, Inc. Albany, NY (Cliff Zucker, Simeon Goldman, of counsel), for plaintiffs.

Vincent J. McArdle, Jr., Corp. Counsel, City of Albany, Dept. of Law, Albany, NY (Thomas A. Shepardson, Asst. Corp. Counsel, of counsel), for defendant.

## MEMORANDUM–DECISION AND ORDER

McAVOY, Chief Judge.

### I. BACKGROUND

Plaintiff Oxford House, Inc. ("OHI") is a not-for-profit Maryland based corporation which "helps persons in recovery from alcohol and drug dependence establish and maintain houses." First Amended Complaint ¶ 1 (hereinafter "AC"). A number of such houses were recently established in the City of Albany, three of which are central to the instant dispute. Plaintiffs John Doe I–III are three individuals living at each of these three Oxford House residences in the City of Albany. AC ¶¶ 6–9. Each Oxford House is comprised of more than three unrelated persons living together, and each house is in an area zoned for single or two family residences.

The City of Albany maintains a zoning law which disallows more than three unrelated persons from living together unless they are the functional equivalent of a traditional family. AC ¶¶ 1, 17; Albany City Code § 27–160 (the "Grouper Law"). From April through June of 1992 plaintiff OHI received notices from the defendant ordering each of the three OHI premises to reduce their occupancy to less than four individuals. AC ¶ 27. OHI responded to these notices by sending a letter to the City Building Department requesting that the City make a "reasonable accommodation in the application of its zoning ordinance to allow Oxford House–Tallmadge to remain intact." AC ¶ 28. OHI cited the Fair Housing Act in support of its request. *Id.* The plaintiffs claim this request was ignored. AC ¶ 29.

In May of 1992, OHI filed a complaint with the U.S. Dept. of Housing and Urban Development, alleging that the City discriminatorily refused to "reasonably accommodate" the OHI residents according to the Fair Housing Act. AC ¶ 30. In June of 1992, a meeting was held between representatives of plaintiffs and defendant. AC ¶ 31. At the meeting, Albany's Building Commissioner insisted that prosecution under the Grouper Law would continue unless plaintiffs applied "to the Building Department for an interpretation of the 'Grouper Law' to determine if the occupants . . . were the 'functional equivalent of a traditional family.'" AC ¶ 32.

OHI made applications at the cost of $75.00 each for each of the three OHI houses. AC ¶ 33. Each application was denied without comment or explanation. AC ¶ 34. OHI claims it received a letter from the Building Inspector indicating that the Building Department had "absolutely no discretion to rule in Oxford House's favor." AC ¶ 35.

In September, OHI appealed this denial (of the familial status) to the Zoning Board of Appeals ("ZBA"). AC ¶ 36. After a well attended public hearing in which many residents expressed their displeasure for OHI generally (AC ¶ 37–43), OHI received written notification that their appeal had been denied. AC ¶ 44 and Exhibit A to complaint. This notice indicated that the appeal concerned the narrow issue of whether the OHI

houses constituted a "functional equivalent" of a family. *Id.* The ZBA found that they did not (AC ¶ 46) and instructed the applicants "to apply for a use variance to establish self-run, self-supported recovery houses at any of these addresses." Exhibit A, Complaint. No variance application was made and the City sought to prosecute the code violation. The matter was set down for trial on the "Grouper Law" violation before the Albany City Court on January 13 [sic], 1993. AC ¶ 48.

The complaint charges that the ZBA "did not consider whether the households were entitled to be reasonably accommodated due to the residents' disabilities...." AC ¶ 46. Plaintiffs also charge that "defendant's inflexible application of its 'Grouper Law' against recovery houses such as plaintiffs' has a disparate impact upon the ability of persons with disabilities to enjoy and benefit from living in residential communities from which they have historically been excluded." AC ¶ 54. Plaintiffs further assert that the individual residents of Oxford Houses in Albany, including the three named Doe plaintiffs, will suffer irreparable harm if the Grouper Law is enforced. AC ¶ 56. Based upon this, plaintiffs bring the following claims:

**Count I**—*Fair Housing Act Amendments and 42 U.S.C. § 1983*

Defendant's refusal under color of state law (AC ¶¶ 27–160) to reasonably accommodate plaintiffs' need to have households comprised of more than three unrelated individuals with disabilities violates plaintiffs' statutory rights under the Fair Housing Act Amendments, 42 U.S.C. § 3604(f)(3)(B) and 42 U.S.C. § 1983.

**Count II**—*Americans With Disabilities Act and 42 USC § 1983*

Defendant's refusal under color of state law to reasonably modify their rules, policies, practices, and procedures related to enforcement of Albany's Zoning Ordinance prevents people with disabilities from securing the benefits and enjoyment of residential housing ... [and] violates plaintiffs' statutory rights under the American's With Disabilities Act, 42 U.S.C. § 12131–12133 and 42 U.S.C. § 1983.

**Count III**—*Due Process Clause and 42 USC § 1983*

By failing under color of state law to provide any meaningful procedures or policies to consider plaintiffs' request for a reasonable accommodation, defendant is depriving plaintiff of liberty and property without due process of law. Such failure is violative of the Fourteenth Amendment of the United States Constitution, as well as 42 U.S.C. § 1983.

AC ¶¶ 58–60.

In addition, plaintiffs seek to proceed against the defendant in equity, claiming that there is no adequate remedy at law to redress defendant's illegal and wrongful acts. AC ¶ 61. Under the wherefore clause, plaintiffs request injunctive and declaratory relief, compensatory and punitive damages, and attorney's fees and costs.

On January 19, 1993, this court granted a temporary restraining order preventing prosecution of the then sole-plaintiff Oxford House, Inc. Following oral argument, the plaintiff was granted leave to amend the complaint to add the individual plaintiffs and the restraining order was continued by stipulation of the parties. Presently before the court is plaintiffs' motion for a preliminary injunction seeking to restrain the City from prosecuting the city code violation until such time as the federal action is resolved.

## II. DISCUSSION

### A. Anti-Injunction Statute—28 U.S.C. § 2283

█ Any request for injunctive relief against a state proceeding instantly brings into focus the important doctrines of federalism and abstention. These doctrines serve to tether the federal judiciary's otherwise valid exercise of power and to underscore its respect for the jurisdiction of the state courts. In examining these doctrines, the court first turns to a statutory prohibition of federal injunctions of state court proceedings—the Anti-Injunction Statute, 28 U.S.C. § 2283.

Section 2283 of Title 28 of the United States Code provides that:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283.

In *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), the Supreme Court determined that actions under 42 U.S.C. § 1983 fell within the phrase "except as expressly authorized by Act of Congress." Given the fact that plaintiffs cloak each of their causes of action in § 1983, the court finds sufficient reason to avoid the proscriptions of the anti-injunction statute. Further, other district courts have recognized exceptions to the anti-injunction statute under the "expressly authorized" exceptions wherein the plaintiff seeks redress under the Fair Housing Act. *See, Oxford House–Evergreen v. City of Plainfield*, 769 F.Supp. 1329, 1341 (D.N.J.1991) (dicta). Consequently, no bar exists under 28 U.S.C. § 2283.

## B. Younger Abstention

■ Defendant argues that because plaintiffs seek injunctive and declaratory relief against a state quasi-criminal proceeding, the Court should abstain under the doctrine established in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Plaintiffs argue that an exception to *Younger* abstention should be applied in the instant case.

In *Younger v. Harris* the Supreme Court announced that federal courts should abstain from interfering with pending state criminal prosecutions[1] unless there is a showing of "great and immediate" irreparable harm. *Id.* at 46, 91 S.Ct. at 751. This policy is compelled by the interests of federalism, comity, and equity. *See id.* at 43–44, 91 S.Ct. at 750; *Davis v. Lansing*, 851 F.2d 72, 76 (2d Cir.1988). The Supreme Court has held that

Younger abstention applies to both injunctive and declaratory relief. *See Samuels v. Mackell*, 401 U.S. 66, 73, 91 S.Ct. 764, 768, 27 L.Ed.2d 688 (1971). Where the relief requested also includes monetary damages that are unavailable in the state proceeding, as in the present case, then the court should stay rather than dismiss the federal action for damages. *See Deakins v. Monaghan*, 484 U.S. 193, 202, 108 S.Ct. 523, 529, 98 L.Ed.2d 529 (1988).

■ In *Christ The King Regional High School v. Culvert*, 815 F.2d 219 (2d Cir.), *cert. denied*, 484 U.S. 830, 108 S.Ct. 102, 98 L.Ed.2d 63 (1987), the Second Circuit adopted a three-prong test for determining the applicability of Younger abstention. In order for the court to properly invoke Younger in any given situation, each of the following questions requires an affirmative response: (1) is there an ongoing state proceeding; (2) is an important state interest implicated; and (3) does the plaintiff have an avenue open for review of constitutional claims in the state court? *Id.* at 224 (applying *Ohio Civil Rights Comm'n v. Dayton Christian Schools*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986)); *Canny v. Ray*, 1991 WL 268692, 1991 U.S.Dist. LEXIS 17994 (N.D.N.Y.1991). The defendant has not addressed this three-prong analysis and the court doubts whether all three of the elements could be fulfilled in the instant case. Nonetheless, because the court finds that an exception to the Younger doctrine applies, it will assume for present purposes that the three-prong test has been satisfied.

■ "Exceptions to the doctrine of Younger abstention are quite narrow. Even irreparable injury, unless 'both great and immediate,' is insufficient to warrant an exception to this policy. For instance, 'the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution' does not establish the sort of irreparable

---

1. The pending state proceeding in Younger was a criminal prosecution, but the Court has since held that when important state interests are involved, the Younger abstention doctrine also applies to civil judicial proceedings and administrative proceedings of a judicial nature. *New Orleans Public Service, Inc. v. Council of New Orleans* 491 U.S. 350, 369, 109 S.Ct. 2506, 2519, 105 L.Ed.2d 298 (1989); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). In the instant case, the Albany Code violation prosecution is a "quasi-criminal" adjudication.

injury that would permit federal interference in the state proceedings." *Feerick v. Sudolnik,* 816 F.Supp. 879 (S.D.N.Y.1993) (citations omitted). Rather, specifically enumerated exceptions have developed to the Younger Abstention doctrine. These fall into two generally recognized categories: 1) the "exceptional circumstances" category wherein it must be shown that either immediate and irreparable harm will result absent federal court interaction or that the state law to be applied is unconstitutional or that there is insufficient means to insure constitutional protection in the state proceeding; or, 2) the "bad faith prosecution" category wherein there is evidence that the charges against the plaintiffs were instituted with "no genuine expectation" of their eventual success, but only to discourage the exercise of the plaintiffs' constitutional rights. *See Allee v. Medrano,* 416 U.S. 802, 819, 94 S.Ct. 2191, 2202, 40 L.Ed.2d 566 (1974); *Lewellen v. Raff,* 843 F.2d 1103, 1109 (8th Cir.1988) (citing cases); *Canny v. Ray,* 1991 WL 268692, 1991 U.S.Dist. LEXIS 17994 (N.D.N.Y.1991). Plaintiffs here argue that there is evidence both that the state court prosecution was instituted in bad faith and that immediate and irreparable injury will occur if it the state action is not enjoined. The court need only address the irreparable harm element.

### 1) Irreparable Harm

■ Plaintiffs make two distinct arguments regarding the irreparable harm element. Plaintiffs' first argument is that if the underlying state prosecution continues, plaintiff-residents will be called to testify in the proceeding. Based upon the acrimonious atmosphere which existed at the ZBA appeal, plaintiffs contend that they will be open to public disdain and/or extreme stress from their testimony. Because they are in a pre-

carious position regarding their alcohol and drug rehabilitation, they fear that this stress could force residents to fail in their recovery and therefore suffer irreparable harm.

As a second argument, the resident-plaintiffs contend that if they are displaced from their recovery homes, their chances of continued success with sobriety or drug-free living are minimal. Again, they contend that this loss would be irreparable.[2]

Assuming *arguendo* that the resident-plaintiffs of the Oxford Houses will be called to testify in the City Court trial, an assumption this court has not confidently accepted, the court is prepared to assume that harm may befall the plaintiffs. Whether it is irreparable is a questionable issue but one which the court need not reach. This is because the court willfully accepts the conclusion that if the residents are displaced of their recovery residences, whether they testify at trial or not, the chances are greatly increased that they will relapse into a life of alcohol or chemical addiction. For the reasons so clearly enunciated in the cases of *Sullivan v. City of Pittsburgh,* 811 F.2d 171, 183 (3rd Cir.1987) and *Oxford House–Evergreen v. Plainfield,* 769 F.Supp. 1329 (D.N.J.1991), the court finds this to be sufficient immediate and irreparable harm to forgo abstention.

### C. Standing

Defendant next asserts that neither the individual nor the corporate plaintiffs having standing to maintain the instant action. The court does not agree.

■ As to the standing of the individual plaintiffs, defendant maintains that these plaintiffs do not have a sufficient stake in the litigation to constitute standing because it is quite possible that if the City prevails and the Oxford Houses are forced to reduce the

2. In its Memorandum of Law, plaintiffs also contend that "a substantial showing that a defendant has violated the Fair Housing Act creates a presumption of irreparable harm." *Gresham v. Windrush Partners, Ltd.,* 730 F.2d 1417, 1423 (11th Cir.1984), *cert. denied,* 469 U.S. 882, 105 S.Ct. 249, 83 L.Ed.2d 187 (1984). As plaintiff correctly notes, the *Gresham* decision held that such a presumption exists and that it is rebuttable. By making it rebuttable, the defendant can show that the FHA violation won't occur and

therefore defeat the showing of irreparable harm. Thus, in order to determine the issue of irreparable harm as recognized in the *Gresham* decision, the plaintiff must make the same showing as required under the second element the *Jackson Dairy* preliminary injunction test—that is, a likelihood of success on the merits. Because the court will eventually reach this determination, it will not address this issue at this moment but will, for present purposes, assume that the irreparable harm element has been fulfilled.

number of occupants, these individuals may maintain their occupancy nonetheless because three individuals in every location will be permitted to stay. This position, however, represents a misconception of either standing or of the allegation of the complaint or both.

"[I]n order to meet the minimum constitutional requirements for standing, a plaintiff must allege an actual or threatened injury that is fairly traceable to the allegedly unlawful conduct of the defendant and is likely to be redressed by the requested relief." *Sullivan v. Syracuse Housing Authority,* 962 F.2d 1101, 1106 (2d Cir.1992) (interior quotes omitted). Here, plaintiffs allege that they will be denied the benefits of their recovery home if the Grouper Law is enforced because such a home is made possible only by the economies of scale created by pooling the income [3] and mutual moral support of six or more individuals. It is plaintiffs' theory that the defendant's strict enforcement of this ordinance is in violation of the FHA, the ADA, and the Due Process Clause of the Constitution and that injunctive relief will remedy the threatened harm. Whether plaintiffs' claim is meritorious or not, their interest in the litigation is self evident and defendant's opposition on this score is without merit.

With regard to the standing of the corporate plaintiff, the defendant asserts that Oxford House, Inc. does not have a sufficient interest in the litigation because it does not maintain day-to-day control over the individual houses.

■ While admittedly not maintaining a daily presence, OHI contends that its function of overseeing the start-up and continuation of these three houses, as well as others in Albany, gives them sufficient interest in the litigation and, through the possibility of loss of state loans and funding if the houses are closed, sufficient injury to maintain standing. The court agrees. Further, OHI is the entity which initially rents the houses and maintains the leases on them. Under the Fair Housing Act, OHI has standing to assert the discrimination which it experiences from its own acts of attempting to rent (or, as the case here, sublease) to individuals with handicaps. *See* 42 U.S.C. §§ 3602(d) & 3604(f)(3)(B).[4]

### D. Preliminary Injunction
### 1. *Standard—Preliminary Injunction— Jackson Dairy*

"The standard in the Second Circuit for injunctive relief clearly calls for a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) suffi-

---

**3.** Under the federal Anti–Drug Abuse Act of 1988, 42 U.S.C. § 300x–4a, Oxford House, Inc. has entered into a contract with the State of New York to administer a revolving loan fund for start-up loans to help establish group homes for recovering alcoholics and substance abusers throughout the state. § 300x–4a, however, allows groups of four or more recovering alcoholics or substance abusers who want to live in a group home to borrow up to $4,000 to cover the start-up expenses of renting a house. Presumably, if the Grouper Law is enforced, OHI will lose its eligibility, at least for homes in Albany.

**4.** Section 3602(d) is the definitional section of the Fair Housing Act. It states:

(d) "Person" includes one or more individuals, corporations, partnerships ...
42 U.S.C. § 3602(d).
From this, the court assumes that plaintiff corporation is asserting that its Fair Housing Act Rights have been violated under § 3604(f)(1) & (3)(B). These provide:
**Discrimination in the sale or rental of housing and other prohibited practices**

As made applicable by section 3603 of this title and except as exempted by section 3603(b) and 3607 of this title, it shall be unlawful—

\* \* \* \* \* \*

**(f)(1)** To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter· because of a handicap of—
**(A)** that buyer or renter;
**(B)** a person residing or intending to reside in that dwelling after it is sold, rented, or made available;
**(C)** any person associated with that buyer or renter.

\* \* \* \* \* \*

**(3)** For purposes of this subsection, discrimination includes—

\* \* \* \* \* \*

**(B)** a refusal to make reasonable accommodation in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling;
42 U.S.C. § 3604(f)(1) & (3).

ciently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (*per curiam*).

### i) Irreparable Harm

■ The issue of irreparable harm has already been discussed in relation to abstention and will not be repeated here. The court adopts that finding as if made in the preliminary injunction context. Suffice it to say that the determination turns on the second half of the *Jackson Dairy* standard.

### ii) Likelihood of Success on the Merits

#### a. Maintaining the Status Quo

"[A] movant seeking to preserve the status quo 'need not show that success is an absolute certainty, rather, the movant need only make a showing that the probability of his prevailing is better than fifty percent.' *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir.1985), *quoted in Eng v. Smith*, 849 F.2d [80] at 82 [2d Cir.1988]. Where, however, a preliminary injunction would not preserve the status quo but would ... grant substantially all the relief the moving party ultimately seeks, the moving party must meet a more stringent standard—it 'must show a substantial likelihood of success on the merits.' *Eng*, 849 F.2d at 82 (*quoting Abdul Wali*, 754 F.2d at 1026)."

*Midtown School of Business v. Foley*, 90–CV–172 at p. 11, 1990 WL 21287 (N.D.N.Y. 1990) (McAvoy, J.).

■ Here, the plaintiffs seek to maintain the status quo pending the outcome of the instant federal claims. Thus, they need only show that they have better than a fifty percent chance of succeeding to prevail under the "likelihood of success" prong of the *Jackson Dairy* standard.

### 2. Likelihood of Success OR Sufficiently Serious Questions ... and a Balance of Hardships....

The determination by the court is a difficult one. The parties have challenged even the most basic premise of each other's positions. In addition, the parties have focused their arguments almost exclusively on the FHA at the exclusion of the ADA and Due Process claims. That being so, the court addresses each contested element seriatim and, unless otherwise indicated, analyzes the positions under the FHA.

#### i. Handicap requiring accommodation?

■ The Fair Housing Act prohibits discrimination in housing based upon a handicap of an individual. 42 U.S.C. § 3604(f)(1). The Act also requires that a reasonable accommodation be made to allow handicapped individuals to partake in the housing options available. 42 U.S.C. § 3604(f)(3)(B). There is no serious dispute that the individual plaintiffs are handicapped within the meaning of the FHA.[5] *See Teahan v. Metro–North C.R. Co.*, 951 F.2d 511, 517 (2d Cir.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 54, 121 L.Ed.2d 24 (1992); *United States v. Southern Management Corp.*, 955 F.2d 914, 918 (4th Cir.1992). Rather, the central dispute is whether the City of Albany's enforcement of the Grouper Law works a statutory deprivation upon the plaintiffs. It should be noted that the plaintiffs do not challenge the constitutionality of this law. Instead, they challenge its application in the instant situation.

---

**5.** To determine "handicap" look to § 5(b) of the 1988 amendments of the FHA (codified at 42 U.S.C. § 3602(h)):

(h) "Handicap" means, with respect to a person—

(1) a physical or mental impairment which substantially limits one or more of such person's major life activities,

(2) a record of having such an impairment, or

(3) being regarded as having such impairment,

but such term does not include current, illegal use of or addiction to a controlled substance as defined in section 802 of Title 21.

42 U.S.C. § 3602(h).

Whether *former* addiction to drugs or alcohol qualifies as a handicap is not open to as easy a determination as plaintiff would have this court believe. *See United States v. Southern Management Corp.*, 955 F.2d 914 (4th Cir.1992) (discussing when an individual becomes a former drug/alcohol *abuser* as opposed to a current *user*.)

The defendant asserts that no violation of the FHA or any statute is made out. In this regard, the City argues that the Grouper Law does not prevent these handicapped individuals, or any individuals—handicapped or otherwise—, from obtaining housing in the City of Albany. The City maintains that handicapped individuals may obtain housing in the City of Albany and stay in compliance with the law provided no more than three such individuals who are not family members (or the functional equivalent thereof) reside in any one single-family residence.

In opposition, the plaintiffs assert that their handicap requires them to live in close proximity—in groups of six or more—to provide necessary moral support and counseling during their road to recovery. The defendant claims that the Grouper Law does not prevent this either. It argues that separate groups of three handicapped individuals can live side-by-side in duplexes or one-on-top-of-the-other in two family upstairs/downstairs homes. Further, the City maintains that the groups of three can live next door to each other. The City challenges the plaintiffs' professed need to live in six-person groups as merely a cost saving alternative not related to handicap but rather a universal concern common to many groups. In fact, the City notes that it is the large concentration of colleges in the City which promoted the City to enact the Grouper Law in order to prevent students, who are often living on meager incomes, from living in large numbers. The professed reasons for the enactment was not a disdain for students, but rather to alleviate health and safety problems which arise when large groups reside under one roof. Thus, the City maintains that application of the Grouper Law to these individuals is not a form of discrimination on account of handicap but simply universal enforcement of a constitutional and necessary law.

Further, the City maintains that any "reasonable accommodation" mandated by the statute must be to serve a purpose related to the handicap. In the case of the FHA, this reasonable accommodation must be to allow handicap individuals to access housing. But, because the Grouper Law does not prevent such access, the City argues that the FHA does not prohibit its application. In a sense, the City argues that no accommodation is required because no handicapped-related deprivation is worked upon the plaintiffs. Rather, their deprivation, if one can be said to exist, relates to their desire to save money—not because they are former drug or alcohol addicted individuals.

Of course, the question of what living conditions are necessary to a particular handicap (as opposed to the question of what accommodations are reasonable) is a factual determination which the court cannot make at this juncture. Rather, evidence must be presented by the parties which persuades the trier of fact that the living conditions proposed by the plaintiffs are required by their handicap. Because the court cannot begin to determine this question, it is incapable of assessing "likelihood of success on the merits." Nonetheless, the existence of this question in the context of the instant case leads the court to conclude that there exist sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. Therefore, on this ground alone the court finds sufficient reason to grant a preliminary injunction. However, the defendant has raised other challenges to plaintiffs' request.

### ii. Do FHA exemptions apply?

As a separate basis for denying the requested injunctive relief, the defendant asserts that the FHA exempts enforcement of laws similar to Albany's Grouper Law. *See* 42 U.S.C. §§ 3604(f)(9) & 3607(b)(1). Section 3604(f)(9) states that "[n]othing in this subsection requires that a dwelling be made available to an individual whose tenancy would constitute a direct threat to the health or safety of other individuals or whose tenency would result in substantial physical damage to the property of others." As stated, the defendant asserts that the Grouper Law serves the health and welfare of all citizens of Albany.

Section 3607(b)(1) provides that "[n]othing in this subchapter limits the applicability of any reasonable local, State, or Federal restriction regarding the maximum number of occupants permitted to occupy a dwelling."

The defendant asserts that the Grouper Law is one such "reasonable ... restriction regarding the maximum number of occupants."

■ Whether the occupancy of these Oxford House groups in the numbers they seek constitutes a "direct threat to the health and safety of other individuals" is not answered simply because it is proscribed by a local ordinance enacted pursuant to the City's police power. Rather, the court is again faced by a determination which will turn on the evidence and legal arguments produced by the parties during the litigation. Presumably, this will answer the .dual question of whether the plaintiffs' desired occupancy will present a direct threat to the health and safety of others and whether the Grouper Law is a reasonable local ordinance addressing maximum occupancy of a dwelling. The court does find, nonetheless, that this matter presents sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. Therefore, on this ground the court again finds sufficient reason to grant a preliminary injunction. Yet, there are still further objections presented by the defendant to the requested injunction.

### iii. Accommodations— What's reasonable?

■ Assuming *arguendo* that a reasonable accommodation is required in the instant situation, (that is, assuming that the plaintiffs' handicap requires six or more individuals to live under one roof), and assuming that the Grouper Law is not exempted from the FHA, the question then becomes "what is a reasonable accommodation?" The defendant asserts that a request for a "reasonable accommodation" has not yet been made. The plaintiffs assert that it has. The issues turns on one's definition of a reasonable accommodation.

The plaintiff asserts that a "reasonable accommodation" would have been to classify the various groups as "functional equivalents" of families. However, because they received what they feel amounts to a *pro forma* denial, plaintiffs claim that no accommodation—reasonable or otherwise—was made by the City.

In opposition, the City defends the Building Department's determination both on the merits and the policy upon which it is based.[6] Irrespective of that decision, the defendant contends that an avenue for the plaintiffs' requested "accommodation" still exists. Defendant asserts that the plaintiff can seek a "use variance" from the city zoning law to allow their group homes in single family-zoned areas. By allowing plaintiff to seek a variance, defendant argues that a reasonable accommodation is accorded.

The plaintiff counters this "variance" argument with the New Jersey District Court case of *Oxford House, Inc. v. Cherry Hill,* 799 F.Supp. 450 (D.N.J.1992). In this case, the district court stated in a footnote that it rejected the idea that requiring plaintiffs to apply to the zoning board for an interpretation of a variance constituted a reasonable accommodation. In reaching this conclusion, the district court stated:

> "Reasonable accommodation" means changing some rule that is generally applicable to everyone so as to make its burden less onerous on the handicapped individual. Thus, where everyone is provided with "equal access" to a building in the form of a staircase, reasonable accommodation to those in a wheelchair may require building a ramp. Here, defendant's suggestion that making the process of applying for a C.O. *more* onerous for plaintiffs than it is for the majority of applicants, somehow constitutes "reasonable accommodation," stands the concept on its head. It is analogous to arguing that a rule requiring only handicapped people to pay a special fee before

**6.** As to the merits, the City contends the application was denied because the dynamics of the groups (from which members continually leave or are expelled and new ones are invited in) is antithetical to the criteria of the functional equivalent of a family which requires an underlying stability of core members. As to policy, the city asserts that the Grouper Law and the "functional equivalent" criteria was applied equally to plaintiffs as to all others and that discrimination would arise if, as the plaintiffs suggest, it was selectively enforced.

entering a building constitutes a reasonable accommodation.

799 F.Supp. at 462, fn. 25.

However, the facts of *Cherry Hill* are quite different than the instant case. In *Cherry Hill* the township enforced a rule which required all groups of unrelated individuals wishing to live together to apply for a zoning variance prior to receiving a Certificate of Occupancy. 799 F.Supp. at 455. Such groups were presumed not to constitute a family and were required to show "permanency and stability" in order to obtain the C.O. while related individuals were automatically considered a "family" no matter how large or unstable. *Id.* However, the township had no written criteria by which to measure "permanency and stability" and there were indications in the record in *Cherry Hill* which lead the District of New Jersey to conclude that this standard was applied in a discriminatory fashion. *Id.*

Unlike in Cherry Hill, groups of unrelated people numbering three or less do not need prior approval to occupy a home in Albany. Unless the plaintiffs can establish that the need to reside in groups numbering four or more is handicap related, it is quite possible that the FHA would provide no basis for any "accommodation" in this regard and the "onus" of the zoning variance application would be academic. Further, the record is not sufficiently developed for the court to determine whether the application of the "functional equivalent of a family" criteria in the City of Albany provides the plaintiffs with a meaningful opportunity to qualify thereunder. Aside from the public statements of Mayor Whalen, which are ambiguous at best, there is no indication in the present record that the Grouper Law was applied with a discriminatory motive or in a discriminatory fashion.

Consequently, the court rejects reliance on the proffered footnote from the *Cherry Hill* decision at this time. Still further, the court is not persuaded by plaintiffs' argument that, even absent an attempt, they are sure to be denied a use variance. Such a position is premature and, because the possibility exists that they will be reasonably accommodated through the use variance mechanism, the present dispute is not fully ripe for adjudication. Nevertheless, because of the equities of this case as discussed throughout, the court chooses not to dismiss the matter pending exhaustion of the zoning process. Because of the probability of irreparable harm occurring if the status quo is altered, the court will retain jurisdiction of the matter in so much as a FHA, ADA, Due Process claim may have already occurred and it will issue a conditional preliminary injunction. The injunction will prevent alteration of the status quo by either party pending the outcome of the litigation. The injunction will be conditioned on the plaintiffs applying for a use variance for each of the three OHI residences which are subject to prosecution and which house the individual plaintiffs. Such applications must be made within sixty (60) days of the signing of this order. If such applications are not made within sixty (60) days from the signing of this order, the injunction shall expire and the court shall entertain motions to dismiss the action. If, on the other hand, good faith applications are made, the injunction shall continue pending the outcome of the underlying claims.

If and when the use variance process has been attempted by the plaintiffs, and if the present controversy continues to exist, the parties shall report back to this court in letter briefs describing the proceedings at the zoning board and advising the court of the posture of the litigation. At that time, the court shall issue an expedited discovery and motion schedule and the matter shall be set down for as early a trial date as the court's schedule shall allow.

## III. CONCLUSION

For the reasons discussed here, it is hereby

**ORDERED** that the plaintiffs' motion for a preliminary injunction is **granted** and the parties are enjoined from altering the status quo by either prosecuting the alleged Grouper Law violations or by increasing the number of Oxford Houses or the size of any present Oxford House located within the City of Albany, New York. Further, it is hereby

ORDERED that the injunction shall expire within sixty (60) days from the date on which it is signed unless plaintiffs have, prior to the expiration of these sixty days, made application to the Albany Zoning Board (or the appropriate governmental agency in the City of Albany) for a "use variance" for each of the three Oxford Houses in which the three individual plaintiffs reside. Further, it is hereby

ORDERED that if the plaintiffs make the application as describe in the preceding paragraph, the parties shall report back to this court in letter briefs describing the proceedings at the zoning board and advising the court of the posture of the litigation. At that time and if the present controversy still exists, the court shall issue an expedited discovery and motion schedule and the matter shall be set down for as early a trial date as the court's schedule shall allow. Further, it is hereby

ORDERED that the public file of this case shall contain only redacted documents which do not identify the individual plaintiffs other than by fictitious name and that all documents filed with the court which specifically identify the plaintiffs shall be sealed and shall remain under seal until further order of this court.

IT IS SO ORDERED.