**NATIONAL CASUALTY COMPANY,**
Plaintiff,

v.

**JORDACHE ENTERPRISES, INC.,** Greater Texas Finishing Corporation, Golden Trade S.R.L., Gitano Group, Inc., Bugle Boy Industries, Inc., Rio Sportswear, Inc., and Bonjour International Ltd., Inc., Defendants.

**No. 91 Civ. 5964 (JMC).**

United States District Court,
S.D. New York.

Jan. 7, 1994.

Robert A Spiegelman, New York City, for defendant Jordache Enterprises, Inc.

Kroll & Tract, New York City, for defendant Bonjour Intern.

Debevoise & Plimpton, New York City, for defendant Golden Trade, S.R.L.

Kral, Clerkin, Redmond, Ryan, Perry and Girvan, New York City, for plaintiff.

Conkle & Olesten, P.C., Los Angeles, CA, Bathgate, Wegener, Dugan, Wouters, Neuman & Wolf, Newark, NJ, for defendant Rio Sportswear.

Hale & Dorr, Boston, MA, for Greater Texas Finishing Corp.

## MEMORANDUM AND ORDER

CANNELLA, District Judge:

Defendant's motion to stay this action is denied. Defendant's motion to dismiss plaintiff's complaint with respect to each of the other named defendants is denied.

## BACKGROUND

This is a declaratory judgment action based on diversity jurisdiction in which plaintiff National Casualty Company ["National"] requests this Court's adjudication as to its rights and obligations with respect to the defendants under a general liability insurance policy that plaintiff issued. Among other matters, plaintiff seeks a declaration from this Court that it is not contractually obligated to pay for the legal defense of its insured under the insurance policy in question in a specific patent-infringement suit that is also before this Court in a separate action. Defendant Jordache Enterprises, Inc. ["Jordache"] now moves to stay the instant declaratory judgment action pending the resolution of a California state-court proceeding. In this state-court action—which itself has been stayed pending the outcome of the action before this Court—Jordache and Ditto Apparel of California, Inc. ["Ditto"] allege that National breached the same insurance contract that is the subject of the instant action by refusing to defend Jordache in the aforementioned patent-infringement suit.[1] Defendant Jordache also moves to dismiss plaintiff's complaint with respect to each of the other named defendants to the instant action. For the reasons stated herein, Jordache's motion is denied in its entirety.

As set forth in plaintiff's complaint, and supplemented by other matters of public record, the procedural history of this case is as follows. Plaintiff National alleges that it issued a general liability insurance policy to defendant Jordache, identified as policy # GL 052956, providing insurance coverage of limited scope to Jordache for the period beginning November 17, 1989 and ending November 17, 1990. Plaintiff alleges that the dollar limitation on coverage under this policy was $1,000,000 for each occurrence, with

---

1. Ditto has not been named as a defendant to the instant action.

$1,000,000 also serving as the aggregate dollar limitation on coverage in the event that more than one claim was attributable to a single occurrence.[2]

In October 1990, a federal patent-infringement suit, entitled *Golden Trade S.R.L. and Greater Texas Finishing Corporation v. Jordache Enterprises, Inc., Gitano Group, Inc., Bugle Boy Industries, Inc., Rio Sportswear, Inc., and Bonjour International Ltd., Inc.,* 90 Civ. 6292 (JMC) (S.D.N.Y.) was filed in this Court ["the *Golden Trade* action"].[3] In the *Golden Trade* action, Golden Trade S.R.L. ["Golden Trade"] alleges that it is the owner by assignment of United States patent # 4,740,213 ["the 213 patent"] and that this patent was duly issued, in compliance with law, by the United States Patent and Trademark Office on April 26, 1988. Greater Texas Finishing Corporation ["Greater Texas"] alleges that it is the exclusive licensee of the 213 patent. Golden Trade and Greater Texas further allege in their first amended complaint that certain methods of producing a random-faded effect on garments and other cloth products were protected by the 213 patent, and that Jordache, Gitano Group, Inc. ["Gitano"], Bugle Boy Industries, Inc. ["Bugle Boy"], Rio Sportswear, Inc. ["Rio"], and Bonjour International Ltd., Inc. ["Bonjour"] were infringing upon this patent. Golden Trade and Greater Texas request as relief a permanent injunction enjoining the named defendants from using, manufacturing, or selling any product that infringes the 213 patent. Greater Texas also seeks monetary damages, including treble damages for willful infringement of the 213 patent, and both plaintiffs seek an award of attorney's fees. *See* Plaintiff's Affirmation in Opposition to Jordache's Motion, Exh. B.

On or about January 2, 1991, Golden Trade and Greater Texas also filed a complaint with the United States International Trade Commission ["the ITC Complaint"] requesting (i) an investigation into alleged unfair methods of competition and unlawful acts pertaining to the importation of certain acid-washed denim garments, (ii) a permanent exclusion order forbidding the importation for sale within the United States of certain acid-washed denim garments, and (iii) a cease-and-desist order with respect to future sales and processing of certain acid-washed denim garments. *See id.* Exh. C.

Returning to the instant declaratory judgment action, plaintiff National alleges that by letter dated November 14, 1990, it agreed to provide the legal defense of Jordache in the *Golden Trade* action under a reservation of rights. National also alleges that by letter dated July 25, 1991, it disclaimed any coverage under the insurance policy in question for claims arising in connection with the ITC complaint.

As to defendant Jordache, plaintiff National seeks a declaration from this Court that plaintiff is not contractually obligated to defend, to indemnify, to insure or to pay any judgments entered against Jordache in the *Golden Trade* action or for any matters relating to the ITC Complaint. National also requests a declaration from this Court allowing National to recover all costs and disbursements expended in defending the *Golden Trade* action. As to defendants Golden Trade, Greater Texas, Gitano, Bugle Boy, Rio and Bonjour—each of whom are nonparties to the insurance policy in question— National seeks this Court's declaration that plaintiff is not obligated to indemnify or to provide coverage to these defendants under said insurance policy.

**2.** In their complaint alleging breach of contract that was filed in California state court, Jordache and Ditto allege that policy number GL 052956, issued by National on November 17, 1989, was "replaced in November 1990 by policy number GL 061508." Plaintiff's Affirmation in Opposition to Jordache's Motion, Exh. F, item 5 (copy of complaint in California action). The Court makes no determination at this time as to whether the GL 061508 policy is substantively applicable to the instant action. Accordingly, the Court notes that its use of the phrase "the insurance policy in question" is not intended to preclude any substantive consideration of the GL 061508 policy.

**3.** On September 27, 1990, Jordache and Ditto filed a declaratory judgment suit in the United States District Court for the Western District of Louisiana seeking a judgment of patent non-infringement and patent invalidity. Shortly thereafter, the parties to this Louisiana federal-court action stipulated to transfer the subject matter of this litigation to the United States District Court for the Southern District of New York.

On July 30, 1991, Jordache and Ditto filed, in the Superior Court of the State of California for the County of Los Angeles, a breach-of-contract action against National alleging that National had failed to perform its contractual obligation to defend Jordache pursuant to the insurance policy in question. In this California state-court action, Jordache and Ditto seek money damages and injunctive relief. *See id.* Exh. F (copy of complaint filed in California action).

Subsequently, on September 4, 1991, National filed the instant declaratory judgment action in this Court.[4]

Sometime after September 4, 1991, National filed in California Superior Court a motion to stay the California state-court action. This motion to stay was granted, pending resolution of the instant action before this Court, by California Superior Court Judge Paul Boland. *See id.* Exh. H (copy of reporter's transcript, Jan. 15, 1992). The parties to the instant action have not brought to this Court's attention any subsequent appellate decision reversing the California order of stay.

Defendant Jordache, acting severally from the other defendants to the instant action, now brings this motion to stay or to dismiss the instant action and offers several arguments in support of its application. First, Jordache argues that a stay of the instant action is required under a first-to-file rule because the California state-court action was filed before the instant action. Second, Jordache contends that California offers the more convenient forum for the resolution of this controversy. Third, Jordache argues that a stay of the instant action in favor of the California action is appropriate because the instant action is not as comprehensive as the California action insofar as Ditto is not a named defendant to the instant action. Dit-

to, meanwhile, is a plaintiff to the California action. Fourth, Jordache asserts that National's claims against the other named defendants to the instant action should be dismissed because these other defendants are not insureds of the insurance policy in question.

National puts forth three arguments in support of its opposition to Jordache's motion. First, National argues that full faith and credit should be given to the order of the California state court staying the California action. Second, plaintiff asserts that the circumstances of the instant case, including the presence of the *Golden Trade* action within this Court and the cessation of litigation in the California forum, weigh in favor of the Court's denial of Jordache's motion. Lastly, plaintiff contends that defendant Jordache lacks standing to assert the rights of the other named defendants.

For the reasons set forth below, the Court denies Jordache's motion to stay or to dismiss this action.

## DISCUSSION

### I. Motion to Stay This Action Pending Outcome of State–Court Proceeding

The Supreme Court has held that the federal courts have a "virtually unflagging obligation" to hear cases within their jurisdiction, and that a stay or a dismissal of an action on account of a concurrent state-court proceeding is permissible only under "exceptional circumstances." *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 817, 96 S.Ct. 1236, 1244, 1246, 47 L.Ed.2d 483 (1976).

 Apart from the traditional abstention doctrines, which the Supreme Court canvassed in *Colorado River,*[5] the Court has

---

4. On September 24, 1991, Jordache amended its complaint in the California state-court action to assert a claim for declaratory relief.

5. The Supreme Court, in *Colorado River,* categorized the traditional abstention doctrines whereby a federal court may justifiably refuse to hear a case within its jurisdiction. The Court noted that under established principles, abstention is appropriate in the following circumstances: (1) where a federal constitutional issue might be mooted

through a state-court determination of applicable state law, *see Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1244 (citing *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)) (other citations omitted); (2) where the case presents a question of state law in which federal review "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern," *id.* (citing *Burford v. Sun Oil Co.,* 319 U.S.

recognized that although "the pendency of an action in . . . state court is [generally] no bar to proceedings concerning the same matter in the Federal court having jurisdiction," certain principles resting upon "considerations of wise judicial administration, giving regard to conservation of judicial resources and [the] comprehensive disposition of litigation" may warrant a departure from this general rule. *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246 (internal quotations omitted). Thus, while the federal courts have a "heavy obligation to exercise jurisdiction," *id.* at 820, 96 S.Ct. at 1247, the presence of exceptional circumstances may militate in favor of either staying the federal action pending the outcome of the state-court litigation, or dismissing the action outright. *See id.* at 818, 96 S.Ct. at 1246.[6]

 In determining whether a stay or a dismissal is warranted, the Supreme Court has instructed the federal courts to consider the following factors: (1) whether jurisdiction has been assumed over specific property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction was obtained by the federal forum. *See id.* Under the law of the Second Circuit, the courts must further consider (5) whether federal law or state law provides the rule of decision, and (6) whether adjudication in the state-court forum would adequately protect the plaintiff's federal rights. *See De Cisneros v. Younger*, 871 F.2d 305, 307 (2d Cir. 1989). The Supreme Court has instructed that no single factor is necessarily dispositive, and that the determination of exceptional circumstances "does not rest on a mechanical checklist, but on a careful balancing of

the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983). Further, under the law of the Second Circuit, this factorial analysis applies regardless of whether the federal action seeks declaratory relief. *See Lumbermens Mut. Casualty Co. v. The Connecticut Bank & Trust Co., N.A.*, 806 F.2d 411, 413 (2d Cir.1986).

 In light of the above-stated factors, the Court now turns to address whether defendant Jordache is able to establish the existence of "exceptional circumstances" requisite to justify a stay of this action. As will be discussed, an analysis of the circumstances of this case—including, most prominently, the absence of any significant progress in litigation in the California state-court forum and the presence of the underlying patent-infringement suit within this federal forum—leads the Court to conclude that Jordache's application for a stay should be denied.

The Court finds that the first, fifth and sixth of the above-stated factors are either inapplicable to this action, neutral, or caution against the granting of Jordache's motion to stay.[7] With respect to the first factor and the sixth factor, "[t]here was no assumption by either court of jurisdiction over any res or property," *Moses H. Cone*, 460 U.S. at 19, 103 S.Ct. at 938, and insofar as the instant action is brought under diversity jurisdiction and implicates questions of state law, there is no concern that the plaintiff's federal rights may be compromised. As to the fifth factor,

---

315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943)); or (3) where federal review would disrupt (a) a state criminal proceeding, *see id.* 424 U.S. at 816, 96 S.Ct. at 1245 (citing *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)), (b) a "state nuisance proceeding[] antecedent to a criminal prosecution," *id.* (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975)), or (c) state tax collection. *See id.* (citing *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943)).

6. The determination of whether a stay—as opposed to an outright dismissal—is warranted

generally will depend upon whether the federal-court action may provide a remedy, such as money damages or injunctive relief, that is unavailable in the state-court action. *See Oxford House, Inc. v. City of Albany*, 819 F.Supp. 1168, 1172 (N.D.N.Y.1993).

7. The second factor (the inconvenience of the federal forum), the third factor (the desirability of avoiding piecemeal litigation), and the fourth factor (the order in which jurisdiction was obtained by the federal forum) will be discussed separately.

which considers whether federal law or state law provides the rule of decision, the Court notes that the instant action presents substantive legal issues involving the application of well-established principles of state insurance-contract law.[8] This factor therefore cautions against a grant of stay. Indeed, because diversity jurisdiction necessarily involves an adjudication of state-law rights, the existence of state-law issues should not be weighed heavily in the determination of whether a federal-court action should be stayed.[9] *See Moses H. Cone,* 460 U.S. at 26, 103 S.Ct. at 942; *Giardina v. Fontana,* 733 F.2d 1047, 1052–53 (2d Cir.1984). The policies that support prosecuting the action in the federal forum are further heightened when, as in the instant case, the adjudication of the state-law issues draws upon the familiar maxims of state insurance-contract law. *See Insurance Co. of N. Am. v. Vermont Mut. Ins. Co.,* 835 F.Supp. 176, 179 (D.Vt. 1993); *Federal Ins. Co. v. Kingsbury Properties, Ltd.,* 1992 WL 131768, at *4–5, 90 Civ. 6211 (JMC), 1992 U.S. Dist. LEXIS 7513, at *12 (S.D.N.Y. June 1, 1992), *reh'g granted on other grounds,* 1992 WL 178588, 1992 U.S. Dist. LEXIS 10159 (S.D.N.Y. July 14, 1992).

Turning to the second of the above-stated factors, the location of the federal forum within the Southern District of New York cautions against a stay of the instant action. As earlier stated, the *Golden Trade* action is also being litigated within the United States District Court for the Southern District of New York. As discussed *supra,* the *Golden Trade* action is the patent-infringement suit with respect to which—along with the com-

plaint filed by Golden Trade and Greater Texas with the International Trade Commission—National now seeks this Court's declaration as to its contractual obligations under the insurance policy in question. Of great significance to this analysis, each of the defendants to the instant action are also parties to the *Golden Trade* action. Therefore, the Southern District of New York can hardly be regarded as an inconvenient forum to the defendants to the instant action because each of these defendants is already embattled in related litigation within this federal forum.[10] Indeed, defendant Jordache, as earlier discussed, itself stipulated to a transfer of the *Golden Trade* action from the United States District Court for the Western District of Louisiana to the Southern District of New York. *See supra* note 3. In addition, Jordache is a New York corporation. *See* Plaintiff's Affirmation in Opposition to Jordache's Motion, Exh. F, item 1 (copy of Jordache's and Ditto's complaint in the California state-court action). Therefore, the Court rejects Jordache's argument that the Southern District of New York is an inconvenient forum for this litigation.

The third factor, which considers the desirability of avoiding piecemeal litigation, also cautions against a stay of this action. The concern for avoiding piecemeal litigation centers upon the risk that the parties will engage in a race to determine which court decides the issues first, in light of the res judicata and the potential collateral estoppel effects of a final judgment. *See Federal Ins. Co.,* 1992 WL 131768, at *7–8, 1992 U.S. Dist.

---

**8.** The Court does not decide at this time which state's choice-of-law rules apply to the substantive issues presented in this action.

**9.** This analysis would not apply if the state-law issues involved a complex regulatory scheme, or matters of domestic relations. In such event, the traditional abstention doctrines, in the proper case, could counsel against adjudication in the federal forum and in favor of a remand to state court. *See Ankenbrandt v. Richards,* —— U.S. ——, ——, 112 S.Ct. 2206, 2215, 119 L.Ed.2d 468, 484 (1992) (abstention on basis of domestic relations exception sought; Court held, however, that *Burford* abstention was inappropriate under the circumstances); *Colorado River,* 424 U.S. at 814–15, 96 S.Ct. at 1244–45 (discussion of *Burford* abstention doctrine with regard to complex

regulatory schemes); *Law Enforcement Ins. Co. v. Corcoran,* 807 F.2d 38, 44 (2d Cir.1986) (abstention permitted in the area of New York State regulation of the insurance industry), *cert. denied,* 481 U.S. 1017, 107 S.Ct. 1896, 95 L.Ed.2d 503 (1987).

**10.** In addition, the Court notes that California Superior Court Judge Paul Boland, in staying the California state-court action pending the resolution of the instant action before this Court, found that the "New York [forum] is convenient to the parties and certainly to some witnesses because New York is Jordache's state of incorporation." Plaintiff's Affirmation in Opposition to Jordache's Motion, Exh. H, at 24 (copy of reporter's transcript, Jan. 15, 1992).

LEXIS 7513, at *20. As to this matter, the Second Circuit Court of Appeals has warned that "the avoidance of piecemeal litigation should be given great weight in the context of declaratory judgment actions because such litigation would complicate and fragment the trial of cases and cause friction between state and federal courts." *Lumbermens Mut. Casualty Co.*, 806 F.2d at 414.

■ Defendant Jordache argues that the instant federal action would not be as comprehensive as the state-court action, and would therefore necessitate a separate adjudication of related claims. In support of its contention, Jordache points to the fact that Ditto is not a named defendant to the instant action. Ditto, meanwhile, is a plaintiff to the California action. The Court, however, is unconvinced that the non-joinder of Ditto creates a substantial risk of piecemeal litigation. As to this matter, the Court notes that Rule 21·of the Federal Rules of Civil Procedure provides a mechanism whereby a party may be "added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Fed.R.Civ.P. 21. In addition, if Ditto wishes to assert any applicable rights in the controversy before this Court, Ditto may bring a motion to intervene in accordance with Rule 24(c) of the Federal Rules of Civil Procedure. In the view of the Court, these procedural safeguards, observed in tandem with the stay of litigation in the California forum, substantially minimize the risk that litigation will proceed on a piecemeal basis.[11] Moreover, because Ditto and National appear to be diverse parties for purposes of the federal diversity statute, the Court finds that National's failure to join Ditto as a defendant to the instant action was not designed to avoid the destruction of this Court's diversity·jurisdiction.[12] *See Hartford Accident & Indem. Co. v. Collins & Aikman Corp.*, 1991 WL 19858, at *1–2, No. 90 Civ. 5539 (TPG), 1991 U.S. Dist. LEXIS 1633, at *4 (S.D.N.Y. Feb.·11, 1991).

The Court further adds that litigating the instant action in this federal forum poses no risk of inducing a race between the federal and state court systems to obtain a final judgment.· *See General Reinsurance Corp. v. Ciba–Geigy Corp.*, 853 F.2d 78, 81 (2d Cir.1988). Once again, the California state-court action has been stayed pending the outcome of litigation in this federal forum. Therefore, the prosecution of this action in the Southern District of New York presents absolutely no risk of affronting the concern for comity that is at the heart of the "exceptional circumstances" doctrine. *See Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246.

Finally, with respect to the fourth factor, the Court finds that the order in which jurisdiction was obtained carries little weight in this analysis. While it is true that the concurrent state-court·action was filed before the instant federal-court action, the Second Circuit Court of Appeals has instructed that this factor is of no importance where limited discovery has occurred in the state-court forum. *See General Reinsurance Corp.*, 853 F.2d at 82; *Law Enforcement Ins. Co. v. Corcoran*, 807 F.2d 38, 42 (2d Cir.1986) (citing *Moses H. Cone*, 460 U.S. at 21, 103 S.Ct. at 939), *cert. denied*, 481 U.S. 1017, 107 S.Ct. 1896, 95 L.Ed.2d 503 (1987). Given that the California action has itself been stayed, any claim of considerable progress in the California forum would be "strictly illusory." *Lumbermens Mut. Casualty Co.*, 806 F.2d at 415.

In sum, defendant Jordache is unable to demonstrate the existence of exceptional circumstances necessary to justify the Court's

---

**11.** The Court notes that defendant has not argued that, pursuant to Rule 19 of the Federal Rules of Civil Procedure, the instant action should be dismissed in favor of the California action because Ditto is an indispensable party to this controversy for which joinder is not feasible. Without deciding this matter at this time, the Court notes that the record reveals that Ditto, by stipulation in the *Golden Trade* action, has already consented to jurisdiction within the United States District Court for the Southern District of New York. *See supra* note 3.

**12.** According to the complaint that Jordache and Ditto filed in the California state-court action, Jordache and Ditto are New York and California corporations respectively, while National is a Michigan corporation. *See* Plaintiff's Affirmation in Opposition to Jordache's Motion, Exh. F, items 1 & 2 (copy of Jordache's and Ditto's complaint in the California state-court action). Plaintiff's complaint in the instant federal action further asserts that National's principal place of business is in Arizona. *See* Plaintiff's Complaint, item 2.

departure from its "virtually unflagging obligation" to hear this case. The presence of the underlying *Golden Trade* patent-infringement suit within the United States District Court for the Southern District of New York—coupled with the California state-court's decision to stay the parallel action pending the resolution of the instant action—leads this Court to conclude that not only would a stay of the instant action be violative of the strictures of the Supreme Court, but that it also would be nonsensical insofar as it would produce, at least temporarily, stays in both fora in which the instant insurance-coverage controversy is being litigated. Accordingly, Jordache's motion to stay this action must be denied.

II. *Jordache's Motion to Dismiss Plaintiff's Action as against the Other Named Defendants*

■ Defendant Jordache also moves to dismiss plaintiff's complaint with respect to each of the other named defendants to the instant action on the grounds that these other defendants are not insureds of the insurance policy in question. Plaintiff, in turn, contends that Jordache lacks standing to assert the rights of the other named defendants to this action. Although they have not affirmatively objected, the other named defendants have not stipulated before this Court in consent to Jordache's representation on their behalf.

■ It is well-established that as a threshold matter of justiciability, a federal court is without jurisdiction to hear a case brought by a claimant who lacks "a personal stake in the outcome of a case sufficient to assure the 'concrete adverseness' that helps define issues." 12 James W. Moore et al., Moore's Federal Practice ¶ 300.02[2], at 1–13 (2d ed. 1993) (quoting *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968)). To have standing to sue, the claimant must allege that "the challenged action has caused him injury in fact." *Association of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). In the absence of a constitutional dimension, it is generally insuf-

ficient for a claimant to allege injury to third persons. *See* Moore's Federal Practice, *supra* ¶ 300.02[2], at 1–14 to 1–15.

The Court regards the policies underlying the doctrine of standing to be transposable to the case at hand. Jordache would suffer no concrete injury or hardship if the Court denied Jordache's motion to dismiss National's complaint as against the other named defendants. Further, the Court sees no valid reason why defendant Jordache should be allowed to assert the rights of the other named defendants when these same defendants very easily could have asserted their own rights through their own counsel. Therefore, on this procedural basis, Jordache's motion to dismiss National's complaint as against the other named defendants must be denied.[13]

*CONCLUSION*

Defendant's motion to stay this action is denied. Defendant's motion to dismiss plaintiff's complaint with respect to each of the other named defendants is denied.

SO ORDERED.

---

13. Even if Jordache did not lack standing to assert this motion, given that plaintiff National seeks declaratory relief, the Court notes that it would not be inclined to dismiss plaintiff's action as against the other named defendants on the basis of the record presently before it.